1

HONORABLE RICARDO S. MARTINEZ

2

3

4

5

6

UNITED STATES DISTRICT COURT

7

FOR THE WESTERN DISTRICT OF WASHINGTON

AT SEATTLE

8

SECURITIES AND EXCHANGE
COMMISSION,

9

10

Plaintiff,

No. 2:23-cv-00580-RSM

11

**MOTION TO DISMISS ON BEHALF OF
DEFENDANTS BITTREX, INC. AND
WILLIAM HIROAKI SHIHARA**

12

vs.

13

BITTREX, INC., BITTREX GLOBAL
GMBH, and WILLIAM HIROAKI SHIHARA,

NOTE ON MOTION CALENDAR: September
8, 2023

14

15

Defendants.

ORAL ARGUMENT REQUESTED

16

17

18

19

20

21

22

23

24

25

26

27

28

BITTREX INC. AND SHIHARA MOTION TO DISMISS
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

I.    Cryptocurrency And Blockchain Technology .................................................... 3

II.   The Bittrex Platform......................................................................................... 5

III.  The SEC Conducts A Six-Year Investigation Of Bittrex And Shihara For Possible Registration Violations And Bittrex Winds Down Its U.S. Operations............................. 5

LEGAL STANDARD......................................................................................................... 6

ARGUMENT ..................................................................................................................... 7

I.    Under The Major Questions Doctrine, The SEC Cannot Regulate Crypto Assets As Securities Because Congress Has Not Clearly Authorized It To Do So ............................. 8

    A.    Regulation Of Tokens As Securities Is A Major Question ..................................... 9

    B.    Congress Has Not Clearly Authorized The SEC To Regulate Tokens As Securities ................................................................................ 10

II.   The SEC Has Not Alleged Facts To Support The Required Element Of Its Claims That Securities Transactions Occurred On The Bittrex Platform ....................... 15

    A.    The SEC's Claims Require Allegations That "Investment Contracts" Were Traded On The Bittrex Platform............................................................. 15

    B.    The SEC Fails To Allege That Any Investment Contracts Existed As Part Of Any Token Sales On The Bittrex Platform ....................................... 18

III.  The SEC Fails To Provide Adequate Notice .................................................... 23

    A.    The Complaint Fails To Allege The Full Scope Of The SEC's Claims................. 23

    B.    The SEC Fails To Provide Fair Notice Of The Alleged Securities Law Violations ................................................................................. 24

IV.   The Control Person Liability Claim Against Shihara Should Be Dismissed ..................... 26

CONCLUSION ................................................................................................................. 27

BITTREX INC. AND SHIHARA MOTION TO DISMISS - i
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

# TABLE OF AUTHORITIES

**Page**

## Cases

*12909 Cordary, LLC v. Berri*,
  No. 8:22-cv-01748-JWH-JDE, 2023 U.S. Dist. LEXIS 67893 (C.D. Cal. 2023) ................. 20

*Adobe Sys. v. Software Speedy*,
  No. C-14-2152 EMC, 2014 WL 7186682 (N.D. Cal. Dec. 16, 2014) ............................ 23, 24

*Alabama Ass'n of Realtors v. HHS*,
  141 S. Ct. 2485 (2021) (per curiam) .................................................................. 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ........................................................................................ 6

*Barron v. Reich*,
  13 F.3d 1370 (9th Cir. 1994) ............................................................................ 9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................... 6, 24

*Biden v. Nebraska*,
  600 U.S. ___ (2023) ................................................................................... 8, 12

*Bittner v. United States*,
  143 S. Ct. 713 (2023) ...................................................................................... 25

*Callan v. Motricity Inc.*,
  No. C11-1340 TSZ, 2013 WL 195194 (W.D. Wash. Jan. 17, 2013) .................................. 27

*Cameron v. Outdoor Resorts of Am., Inc.*,
  608 F.2d 187 (5th Cir. 1979) ............................................................................ 22

*Christopher v. SmithKline Beecham Corp.*,
  567 U.S. 142 (2012) ........................................................................................ 25

*Conley v. Gibson*,
  355 U.S. 41 (1957) .......................................................................................... 24

*Coto Settlement v. Eisenberg*,
  593 F.3d 1031 (9th Cir. 2010) ............................................................................ 4

*Cutera, Inc. v. Lutronic Aesthetics, Inc.*,
  No. 2:20-cv-00235-KJM-DB, 2020 WL 4937129 (E.D. Cal. Aug. 24, 2020) ..................... 24

BITTREX INC. AND SHIHARA MOTION TO DISMISS - ii
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*De Luz Ranchos Inv. Ltd. v. Coldwell Banker & Co.*,
    608 F.2d 1297 (9th Cir. 1979) ................................................................ 18

*Dirdala v. Wells Fargo Bank*,
    No. 3:20-CV-5153-DWC, 2020 WL 2063564 (W.D. Wash. Apr. 29, 2020) ........................ 5

*Fabrinet USA, Inc. v. Micatu, Inc.*,
    No. 20-CV-00382-VKD, 2020 WL 3414657 (N.D. Cal. June 22, 2020) ............................ 20

*FCC v. Fox Television Stations, Inc.*,
    567 U.S. 239 (2012) ........................................................................ 25

*FDA v. Brown & Williamson Tobacco Corp.*,
    529 U.S. 120 (2000) ...................................................... 8, 9, 10, 11, 12, 14, 15

*Flores-Figueroa v. United States*,
    556 U.S. 646 (2009) ........................................................................ 26

*Fruci & Assocs., PS v. A10 Cap. LLC*,
    510 F. Supp. 3d 962 (W.D. Wash. 2020) ...................................................... 6

*Hocking v. Dubois*,
    885 F.2d 1449 (9th Cir. 1989) (en banc) .................................................... 22

*Iglesia Cristiana Luz y Verdad v. Church Mut. Ins. Co.*,
    No. 15-cv-05621-RMW, 2016 WL 692839 (N.D. Cal. Feb. 19, 2016) ............................ 19

*Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*,
    439 U.S. 551 (1979) ........................................................................ 18

*Kerst v. Nelson*,
    171 Minn. 191 (1927) ...................................................................... 17

*Koch v. Hankins*,
    928 F.2d 1471 (9th Cir. 1991) .............................................................. 18

*Landreth Timber Co. v. Landreth*,
    471 U.S. 681 (1985) ........................................................................ 21

*Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc.*,
    No. C12-3433 SC, 2012 WL 5520394 (N.D. Cal. Nov. 14, 2012) ................................ 24

*Mayes v. Biden*,
    67 F.4th 921 (9th Cir. 2023) ................................................................ 8

*MCI Telecom. Corp. v. AT&T*,
    512 U.S. 218 (1994) ........................................................................ 10

BITTREX INC. AND SHIHARA MOTION TO DISMISS - iii
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*Nacif v. Athira Pharma, Inc.*,
  No. C21-861 TSZ, 2022 WL 3028579 (W.D. Wash. July 29, 2022) ................................... 27

*NFIB v. OSHA*,
  142 S. Ct. 661 (2022) (per curiam) ........................................................................... 8, 9, 11

*No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. West Holding
  Corp.*, 320 F.3d 920 (9th Cir. 2003) ................................................................................ 27

*Prohaska v. Hemmer-Miller Dev. Co.*,
  256 Ill. App. 331 (1930) ...................................................................................................... 17

*Reves v. Ernst & Young*,
  494 U.S. 56 (1990) ............................................................................................................... 11

*Rogers v. Assur. IQ, LLC*,
  No. 2:21-cv-00823-RL, 2023 WL 2646468 (W.D. Wash. Mar. 27, 2023) ........................... 19

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ............................................................................................ 18

*SEC v. Edwards*,
  540 U.S. 389 (2004) ...................................................................................................... 17, 21

*SEC v. Kik Interactive Inc.*,
  492 F. Supp. 3d 169 (S.D.N.Y. 2020) ................................................................................... 7

*SEC v. Rubera*,
  350 F.3d 1084 (9th Cir. 2003) ............................................................................................ 18

*SEC v. Todd*,
  642 F.3d 1207 (9th Cir. 2011) ............................................................................................ 27

*SEC v. W.J. Howey Co.*,
  328 U.S. 293 (1946) ................................................................................................. 16, 17, 21

*Sprewell v. Golden State Warriors*,
  266 F.3d 979 (9th Cir. 2001) ................................................................................................ 7

*State v. Heath*,
  153 S.E. 855 (N.C. 1930) ..................................................................................................... 17

*State v. Robbins*,
  185 Minn. 202 (1932) ........................................................................................................... 17

*Tcherepnin v. Knight*,
  389 U.S. 332 (1967) ............................................................................................................. 17

BITTREX INC. AND SHIHARA MOTION TO DISMISS - iv
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*U.S. Telecom Ass'n v. FCC*,
    855 F.3d 381 (D.C. Cir. 2017)................................................................. 10, 11

*United Hous. Found., Inc. v. Forman*,
    421 U.S. 837 (1975).................................................................11, 11, 19, 21

*Utility Air Regul. Grp. v. EPA*,
    573 U.S. 302 (2014).................................................................8, 10, 11, 13

*In re Voyager Dig. Holdings, Inc.*,
    649 B.R. 111 (Bankr. S.D.N.Y. Mar. 11, 2023) ................................... 13

*West Virginia v. EPA*,
    142 S. Ct. 2587 (2022) ........................................... 1, 8, 9, 10, 11, 13, 15

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009) ................................................................ 27

## Statutes

15 U.S.C. § 77aa ......................................................................................... 14

15 U.S.C. § 77g ........................................................................................... 14

15 U.S.C. § 78c(a)(1) .......................................................................... 6, 7, 16

15 U.S.C. § 78c(a)(4) .......................................................................... 6, 7, 16

15 U.S.C. § 78c(a)(5) ................................................................................ 6, 7

15 U.S.C. § 78c(a)(10) ..................................................................2, 7, 16, 21

15 U.S.C. § 78c(a)(23)(A) ................................................................... 6, 7, 16

15 U.S.C. § 78e ............................................................................................ 16

15 U.S.C. § 78o(a) ....................................................................................... 16

15 U.S.C. § 78q-1(b) ................................................................................... 16

## Other Authorities

31 C.F.R. § 1010.100(ff) ............................................................................. 13

Algorand, *Regarding Algorand's Tokens*,
    https://algorand.com/resources/blog/regarding-algos (last visited June 28, 2023)...................4

BITTREX INC. AND SHIHARA MOTION TO DISMISS - v
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*Black's Law Dictionary* (11th ed. 2019) ...................................................................... 20

Comm. on Cap. Mkts Regul., *Cryptoasset Trading Platforms Cannot Register as Securities Exchanges* 1 (June 6, 2023), https://capmktsreg.org/wp-content/uploads/2023/06/CCMR-Crypto-Exchanges-Cannot-Register-With-the-SEC-06-06-23.pdf ................................................................................................... 14

Dep't of Treas., *The Financial Crimes Enforcement Network Proposes Rule Aimed At Closing Anti-Money Laundering Regulatory Gaps for Certain Convertible Virtual Currency and Digital Asset Transactions* (Dec. 18, 2020), https://home.treasury.gov/news/press-releases/sm1216 .................................... 13

Digital Asset Market Structure Discussion Draft, House Comm. on Fin. Servs. & House Comm. on Agric. (2023), https://financialservices.house.gov/uploadedfiles/market_structure_bill_section _by_section.pdf ................................................................................................. 15

Digital Commodities Consumer Protection Act of 2022, S. 4760, 117th Cong. (2022) ............................................................................................................. 15

Fed. R. Civ. P. 12(b)(6) ....................................................................................... 6

Fed. R. Civ. P. 12(e) ............................................................................................ 24

Fed. R. Civ. P. 26(b)(1) ....................................................................................... 25

*Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, Part III, 117th Cong. (May 6, 2021), https://www.congress.gov/117/chrg/CHRG-117hhrg44837/CHRG-117hhrg44837.pdf ...................................................................................... 12, 25

Hester M. Peirce, *Outdated: Remarks Before the Digital Assets at Duke Conference*, SEC (Jan. 20, 2023), https://www.sec.gov/news/speech/peirce-remarks-duke-conference-012023 ......................................................... 12, 19, 25

Lummis-Gillibrand Responsible Financial Innovation Act, S. 4356, 117th Cong. (2022) ............................................................................................................. 15

*Important Message For Bittrex U.S. Customers*, Bittrex, https://bittrex.com/discover/important-message-for-bittrex-u-s-customers ........................... 5

*Oversight of the SEC: Hearing Before the Fin. Serv. Comm.*, 118th Cong. (Apr. 18, 2023) ................................................................................................. 13

BITTREX INC. AND SHIHARA MOTION TO DISMISS - vi
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Rostin Behnam, *Budget Hearing—Fiscal Year 2024 Request for the CFTC: Hearing Before the U.S. House of Representatives Subcomm. on Agriculture, Rural Dev., Food and Drug Administration & Related Agencies*, 118th Cong. (Mar. 28, 2023), https://www.congress.gov/event/118th-congress/house-event/115587.................................................................................................. 13

Rodrigo Seira et al., *Lessons from Crypto Projects' Failed Attempts to Register with the SEC* (Mar. 23, 2023), https://policy.paradigm.xyz/writing/secs-path-to-registration-part-ii .............................................................................................. 15

SEC, *Fiscal Year 2023 Congressional Budget Justification Annual Performance Plan* 4 (Mar. 24, 2022), https://www.sec.gov/files/fy-2023-congressional-budget-justification-annual-performance-plan_final.pdf ........................................................ 9

SEC, *Notice of Effectiveness for Coinbase Global, Inc.* (Apr. 1, 2021), https://www.sec.gov/Archives/edgar/data/1679788/999999999521001252/xslE FFECTX01/primary_doc.xml.................................................................................... 25

*Statement of Commissioner Caroline D. Pham on* SEC v. Wahi, CFTC (July 21, 2022), https://www.cftc.gov/PressRoom/SpeechesTestimony/phamstatement072122....................... 2

William Hinman, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, SEC (June 14, 2018), https://www.sec.gov/news/speech/speech-hinman-061418 ...................................9, 14, 21, 26

BITTREX INC. AND SHIHARA MOTION TO DISMISS - vii
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## INTRODUCTION

After a six-year investigation during which the Securities and Exchange Commission ("SEC" or "Commission") refused to name a single cryptocurrency asset (token[1]) that it claimed Bittrex, Inc. ("Bittrex") unlawfully listed for trading on its platform (the "Bittrex Platform"), the SEC has now charged Bittrex with multiple securities laws violations for failure to register. Yet the Commission is still missing essential elements of its claims. And those claims exceed its authority and defy key securities-laws precedents. This is inexcusable. When the government brings an enforcement action, especially after a prolonged investigation, it should adhere rigorously to the pleading standards and relevant statutory constraints. The SEC failed to do so here.

The SEC's pursuit of Bittrex is especially misguided because the company has wound down its U.S. operations, fully repaid all customers who submitted sufficiently detailed redemption requests, and entered bankruptcy. The Commission is thus pursuing purely registration-based violations against a company that is no longer operating and faces no allegations of fraud. The Complaint should be dismissed for at least three independent reasons: (1) whether tokens should be regulated as securities under the statutes asserted by the Commission is a major question that must be resolved by Congress, not the SEC or this Court; (2) the Complaint fails to adequately allege that any of the secondary-market transactions that took place on Bittrex's platform were transactions in securities; and (3) the Commission has not sufficiently pled the scope of conduct at issue, denying Bittrex proper notice of the claims against it.

*First*, the SEC lacks the "clear congressional authorization" required to apply the securities laws to tokens under the major questions doctrine. *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (citation omitted). Such clear authorization is necessary before an agency can resolve questions of exceptional economic and political significance. The status of the transformative, trillion-dollar crypto industry under the securities laws surely qualifies as such a question. And the

---

[1] Cryptocurrencies may also be referred to as "digital currencies," "virtual currencies," "coins," "tokens," or "digital assets." For ease of reference, this motion generally refers to "tokens."

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 1
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

SEC fails to identify the requisite clear congressional authorization.  The tokens traded on Bittrex's platform fall far outside anything Congress has ever regulated as a security.  And the core requirements of the securities laws—including those invoked by the Commission here—are inherently incompatible with the decentralized nature of crypto.  That is likely why the SEC itself has long doubted its authority to regulate tokens as securities, generally, and why Congress continues to vigorously debate it.  Those are all hallmarks of a major question beyond agency reach.

*Second*, the Complaint fails to allege that any transactions on Bittrex's platform—i.e., secondary-market transactions in already-issued tokens—were transactions in "securities" as that term is used in the Securities Exchange Act of 1934 ("Exchange Act").  15 U.S.C. § 78c(a)(10).  The Commission's theory is that tokens qualify as securities because they are "investment contracts."  *Id.*  But the SEC's allegations in support of that claim turn almost entirely on the transactions by which the tokens were *first issued by the developer*—not on subsequent transactions by which the tokens traded *on Bittrex's platform*.  That distinction is critical.  Whatever the merits of the theory that a token offering may constitute an investment contract (a theory subject to intense debate), Bittrex cannot be liable for any registration violations under the Exchange Act provisions asserted here unless transactions on its platform were investment-contract transactions.  The Complaint includes no factual allegations that secondary-market transactions in tokens are transactions in investment contracts.  And for good reason:  when a token is offered or sold on the secondary market, there is no contract—much less an "investment contract"—between a token purchaser and the token developer.  The SEC's failure to allege facts supporting this core element underlying all of its claims is fatal to its Complaint.

*Third*, the SEC fails to provide fair notice to Bittrex in multiple respects.  The Complaint identifies six "examples" of tokens traded on Bittrex's platform that the SEC contends were securities, but it describes those allegations as a "non-exhaustive list" that may include others. Compl. ¶¶ 110, 141.  Bittrex is accordingly left to guess which, if any, of the hundreds of other tokens traded on its platform might also constitute securities in the Commission's view.  Relatedly, and more fundamentally, the Commission's apparently strategic decision to provide no meaningful

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 2
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

public guidance about which tokens are subject to regulation as securities—particularly in secondary-market transactions—before mounting enforcement actions against supposed violators amounts to a denial of due process.  For years, participants in the crypto industry and many others beyond have pleaded with the SEC to provide some measure of clarity about this issue.  At least one court repeatedly raised the status of tokens in secondary-market transactions with the SEC, only to be told it was a matter of "policy."  *See* p. 26, *infra*.  Meanwhile, the SEC has issued a series of contradictory and inscrutable public statements coupled with seemingly arbitrary enforcement actions.  This Court cannot force the SEC to provide fair notice about its enforcement agenda, but the Court can and should dismiss claims that lack such notice—including the claims asserted against Bittrex here.

Finally, the SEC's separate claim for control-person liability against former Bittrex chief executive William Hiraoki Shihara ("Shihara") should be dismissed because that claim is entirely derivative of the claims against Bittrex, all of which fail.

## BACKGROUND

### I.   Cryptocurrency And Blockchain Technology

A token is a line of computer code that can be used for various applications on a network of computers.  Compl. ¶¶ 44-45.  This is made possible by "blockchain" technology.  *Id.* ¶ 45.  Blockchain is, in the simplest terms, a shared digital ledger that records all transactions on a given network.  *Id.*  When a transaction is initiated, a peer-to-peer computer network uses algorithms to "validate" the transaction.  *Id.* ¶¶ 47-49.  If the validators confirm that the transaction is legitimate, then the transaction is combined with other transactions to create a new block of data.  *Id.* ¶¶ 45, 47-49.  This new block is added to the end of the existing blockchain, creating a permanent, unalterable record of the transaction.  *Id.* ¶ 45.

The kinds of transactions that tokens can be used to facilitate on a blockchain vary widely, as illustrated by the tokens identified in the Complaint.  For example, "'DASH' is the native token of the Dash blockchain and is the token used to pay transaction fees required to propose transactions on the blockchain."  *Id.* ¶ 159.  "DASH can be spent at 'thousands' of retailers through a

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 3
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

'DashDirect' consumer app." *Id.* ¶ 168.  TKN is a token associated with "TokenCard," which purports to be "the first debit card powered by smart contracts incorporating the VISA payments network" on the Ethereum blockchain. *Id.* ¶ 195.  And IHT is a "Global Real Estate Blockchain Cloud Platform" with "a mission to integrate global real estate markets with the blockchain." *Id.* ¶ 220.

Tokens can be obtained through a variety of mechanisms.  Developers may offer users tokens as a reward for completing certain actions, or may distribute tokens for free to promote a platform. The DASH token, for example, was initially distributed "in the form of rewards to miners that provided value to the DASH network by mining block for the blockchain." *Id.* ¶ 160.  Other times, developers will sell tokens prospectively in order to raise money to build a new platform.  This is often referred to as an "initial coin offering" or "ICO." *Id.* ¶ 50.

Tokens may also be purchased in a secondary market. *Id.* ¶ 51.  Platforms, like the one Bittrex operated before it wound down, provide a mechanism by which individuals can buy, sell, and trade tokens. *Id.* ¶¶ 51, 53.

Once launched, platforms running on blockchain networks often become decentralized. *See, e.g.*, Algorand, *Regarding Algorand's Tokens*, https://algorand.com/resources/blog/regarding-algos (last visited June 28, 2023) ("We want to support the goal of true decentralization of the Algorand public network, and the Algo currency.").[2]  This means that the day-to-day operations of the platform are not controlled by any one person or entity.  Instead, users are able to freely interact with each other on the network without oversight by the platform's creator. *See, e.g.*, Compl. ¶ 163 ("Today, Dash claims to be run by a subset of its users, which are called 'masternodes.'").

---

[2]  This article is quoted in the Complaint, ¶ 182, and is accordingly a proper subject of judicial notice. *See Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010) (court may take judicial notice of a document not attached to the complaint "where the complaint necessarily relies upon a document or the contents of the document are alleged in a complaint, the document's authenticity is not in question[,] and there are no disputed issues as to the document's relevance").

## II.        The Bittrex Platform

Bittrex was founded in 2014 by Shihara and two other cybersecurity engineers with the goal of operating a world-class platform for trading tokens. *Id.* ¶¶ 65-66. While operating, Bittrex provided a wide selection of cryptocurrencies to users in the United States along with fast trade execution and dependable digital wallets to hold the tokens, all protected by industry-leading security practices. *Id.* ¶¶ 67-68.

Bittrex operated a secondary market for tokens. The Complaint does not allege that Bittrex issued tokens of its own, nor does it allege that Bittrex sold tokens as part of their initial issuance. Bittrex provided a platform for token-holders to resell tokens, i.e., matching buy offers with sell offers. *Id.* ¶ 66. The SEC does not allege that, when a user purchased a token on Bittrex, there was any connection between the purchaser and the token's developer.

## III.       The SEC Conducts A Six-Year Investigation Of Bittrex And Shihara For Possible Registration Violations And Bittrex Winds Down Its U.S. Operations

The SEC began serving subpoenas on Bittrex in 2017. Decl. of Evan Hengel ¶ 9, *In re Desolation Holdings LLC, et al.*, No. 23-10597-BLS (Bankr. D. Del. May 8, 2023), ECF No. 11 [hereinafter the "Hengel Decl."].[3] On March 31, 2023, Bittrex publicly announced its plans to wind down U.S. operations. Compl. ¶ 16; *see Important Message For Bittrex U.S. Customers*, Bittrex [hereinafter "Wind Down Announcement"], https://bittrex.com/discover/important-message-for-bittrex-u-s-customers (last visited June 30, 2023). In the announcement, Bittrex emphasized that no customer assets were at risk and provided a timeline for users to retrieve funds. Wind Down Announcement, *supra*. All trading on Bittrex ceased on April 14, 2023, and users were advised to withdraw all assets through April 29, 2023. *Id.*; *see* Compl. ¶ 16. Bittrex met all sufficiently-detailed requests for withdrawals and returns of both crypto and fiat deposits submitted by that date. Hengel Decl. ¶ 68.

---

[3] "The Court may take judicial notice of court filings and public records filed in other court proceedings." *Dirdala v. Wells Fargo Bank*, No. 3:20-CV-5153-DWC, 2020 WL 2063564, at *1 (W.D. Wash. Apr. 29, 2020).

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 5
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

On April 17, 2023, while Bittrex was winding down operations, the SEC filed its Complaint. *See id.* ¶ 10. The Commission did not allege that Bittrex committed fraud or caused any customer losses; the Complaint alleges only that Bittrex failed to register as a national securities exchange, broker-dealer, and clearing agency under Sections 5, 15(a), and 17A(b) of the Exchange Act—all of which require registration for entities engaged in "securities" transactions, 15 U.S.C. §§ 78c(a)(1), 78c(a)(4), 78c(a)(5), 78c(a)(23)(A). The Complaint also asserts control-person liability against Shihara under Section 20(a) of the Exchange Act based on the same underlying alleged violations.[4]

Bittrex's U.S. operations ceased on April 30, 2023. Hengel Decl. ¶ 68. On May 8, 2023, Bittrex and certain of its affiliates filed petitions for Chapter 11 bankruptcy in order to manage the distribution of customer assets where the customer did not seek a withdrawal or provide adequate information for a withdrawal request by April 29. *In re Desolation Holdings LLC, et al.*, No. 23-10597-BLS (Bankr. D. Del).

## LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief *that is plausible on its face.*'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A dismissal under Rule 12(b)(6) "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Fruci & Assocs., PS v. A10 Cap. LLC*, 510 F. Supp. 3d 962, 969 (W.D. Wash. 2020) (citation omitted). Accordingly, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court also need not "accept as true allegations that are merely conclusory, unwarranted

---

[4] On June 5 and June 6, 2023, the SEC charged two other crypto asset exchanges with the same registration violations, in addition to other charges. *See* Compl., *SEC v. Binance Holdings Ltd.*, No. 1:23-cv-01599 (D.D.C. June 5, 2023), ECF No. 1; Compl., *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. June 6, 2023), ECF No. 1.

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 6
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979,
2  988 (9th Cir. 2001).

3  **ARGUMENT**

4      The SEC's Complaint raises an issue of first impression: whether a platform that makes
5  certain tokens available for trading on the secondary market is engaged in "securities" transactions
6  that require the platform to register with the SEC as a national securities exchange, broker-dealer,
7  and clearing agency. 15 U.S.C. §§ 78c(a)(1), 78c(a)(4), 78c(a)(5), 78c(a)(23)(A). In advancing that
8  novel assertion of authority, the SEC does not claim that tokens are expressly covered by the
9  Exchange Act's definition of "security." 15 U.S.C. § 78c(a)(10). The Commission instead contends
10 that tokens fall within the Exchange Act's definition of "security" because they are "investment
11 contracts." *Id.* More precisely, the Commission alleges that six specific tokens constituted
12 investment contracts based on the circumstances of their initial offering, and were later made
13 available on the Bittrex Platform. *See, e.g.*, Compl. ¶¶ 1, 4, 67, 98, 99, 101, 110. But the SEC does
14 so without alleging facts regarding any secondary market transactions on the Bittrex Platform, let
15 alone facts sufficient to conclude that these secondary market transactions established investment
16 contracts at the time they occurred on the Bittrex Platform.

17     No court has ever addressed allegations of this kind. As a threshold matter, no appellate
18 court has upheld the SEC's striking proposition that it can regulate the transformative, trillion-dollar
19 crypto industry under the framework of the securities laws—a question that Congress continues to
20 debate actively. And while a few federal district courts have found that developers' *initial offerings*
21 of certain tokens may constitute investment contracts, *see, e.g.*, *SEC v. Kik Interactive Inc.*, 492 F.
22 Supp. 3d 169, 173, 177-80 (S.D.N.Y. 2020), no court has determined that making tokens available
23 for *secondary-market trading*—with zero contractual or other connection between the token
24 purchaser and token developer—constitutes a securities transaction subject to the Exchange Act.
25 Indeed, the SEC until recently disclaimed such an interpretation, and the Commission to this day
26 refuses to provide any meaningful guidance about the boundaries of its position.

27

28

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 7
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

This Court should not be the first to allow such a drastic expansion of government power. The Court should dismiss the Complaint against both Bittrex and Shihara for the following reasons: (1) the SEC lacks authority to regulate tokens traded on the Bittrex Platform because Congress has not clearly authorized it to do so; (2) the SEC fails to adequately allege that securities transactions occurred on the Bittrex Platform; and (3) the Complaint fails to provide fair notice.

## I.  Under The Major Questions Doctrine, The SEC Cannot Regulate Crypto Assets As Securities Because Congress Has Not Clearly Authorized It To Do So

"Administrative agencies are creatures of statute" that "possess only the authority that Congress has provided." *NFIB v. OSHA*, 142 S. Ct. 661, 665 (2022) (per curiam).  In determining the scope of "authority that Congress has provided," *id.*, courts "presume that 'Congress intends to make major policy decisions itself, not leave those decisions to agencies.'" *West Virginia*, 142 S. Ct. at 2609 (citation omitted).  Accordingly, when an agency asserts authority over a question of major "economic and political significance"—particularly when the agency has not done so before—courts "hesitate before concluding that Congress" conferred such authority. *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 160 (2000); *Biden v. Nebraska*, 600 U.S. ___ (2023) (slip op., at 19-25); *see Utility Air Regul. Grp. v. EPA*, 573 U.S. 302, 324 (2014).  "To overcome that skepticism," an agency must "point to 'clear congressional authorization'" for the power it claims. *West Virginia*, 142 S. Ct. at 2614 (citation omitted); *see, e.g.*, *Mayes v. Biden*, 67 F.4th 921, 932-33 (9th Cir. 2023).

The requirement of clear congressional authorization, known as the "major questions doctrine," protects both the constitutional separation of powers and individual liberty. *West Virginia*, 142 S. Ct. at 2609.  It recognizes that, "[i]n our system of government, [i]t is the responsibility of those chosen by the people through democratic processes"—i.e., Members of Congress—to resolve fundamental policy "tradeoffs." *NFIB*, 142 S. Ct. at 666.  When Congress does so in clear terms, the major questions doctrine poses no obstacle to agencies' implementation of legislative direction.  *See id.*  But when agencies "assert[] highly consequential power beyond what Congress" has clearly conferred, the doctrine requires courts to reject such administrative

overreach and ensure that decisions of "such magnitude and consequence rest[] with Congress itself." *West Virginia*, 142 S. Ct. at 2609, 2616.

Here, regulation of tokens as securities is a major question for which Congress has not provided clear authorization to the SEC. The Complaint must accordingly be dismissed.

### A.      Regulation Of Tokens As Securities Is A Major Question

Whether tokens can be regulated as securities—thereby triggering the registration requirements at issue here—is a paradigmatic major question. By any measure, its resolution will have profound "economic and political significance." *Brown & Williamson*, 529 U.S. at 160. The crypto industry has been valued at an estimated $2 trillion. SEC, *Fiscal Year 2023 Congressional Budget Justification Annual Performance Plan* 4 (Mar. 24, 2022), https://www.sec.gov/files/fy-2023-congressional-budget-justification-annual-performance-plan_final.pdf.[5] More broadly, the development of tokens—and their range of potential uses on blockchains—has already changed business practices in areas ranging from shipping to entertainment to finance. And tokens have the potential to further transform the way Americans engage in a wide range of transactions, particularly for those who have traditionally lacked access to centralized institutions. *See, e.g.*, William Hinman, *Digital Asset Transactions: When Howey Met Gary (Plastic)*, SEC (June 14, 2018) [hereinafter "Hinman Speech"], https://www.sec.gov/news/speech/speech-hinman-061418. Given the tremendous stakes of this novel technology, the proper scope of regulation of tokens is the subject of "earnest and profound debate across the country," *West Virginia*, 142 S. Ct. at 2614 (citation omitted)—including in Congress, within the SEC, and among other federal agencies. That is a hallmark of a major question. *See id.*

The presence of a major question here is reinforced by cases in which the Supreme Court has identified major questions. In *Brown & Williamson*, for example, the Court held that applying the FDA's regulatory framework for "drugs" and "devices" to the dramatically different and

---

[5]   *See, e.g.*, *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994) ("Records and reports of administrative bodies . . . constitute" "materials of which the court may take judicial notice.").

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 9
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

significant context of tobacco constituted a major question.  529 U.S. at 159.  Similarly, in *Utility Air*, the Court found a major question where the EPA sought to extend the long-existing definition of "air pollutant" to cover the broad new category of greenhouse gases.  573 U.S. at 310, 324; *see U.S. Telecom Ass'n v. FCC*, 855 F.3d 381, 422 (D.C. Cir. 2017) (Kavanaugh, J., dissenting from denial of rehearing en banc) (finding a major question where the FCC sought to impose longstanding common-carrier requirements for telecommunications companies to Internet service providers). And in *West Virginia*, the Court identified a major question where the EPA asserted regulatory power to "restructur[e]" the electricity industry.  142 S. Ct. at 2607; *see MCI Telecom. Corp. v. AT&T*, 512 U.S. 218, 231 (1994) (describing as a major question the FCC's attempt to change the central regulatory measure—rate-setting—applicable to the telecommunications industry).

If anything, the SEC's assertion of authority to regulate tokens as securities is even more clearly a major question than the agency actions in those cases.  Not only would applying the 1930s-era securities-regulation framework to tokens result in a "restructuring" of the trillion-dollar crypto industry, *West Virginia*, 142 S. Ct. at 2607, it would likely end that industry, *cf. Brown & Williamson*, 529 U.S. at 159.  This is a *quintessential* major question.

### B.       Congress Has Not Clearly Authorized The SEC To Regulate Tokens As Securities

Because the SEC's assertion of authority over crypto assets constitutes a major question, the Commission can proceed only if it has "clear congressional authorization" for its position.  *West Virginia*, 142 S. Ct. at 2609.  But nothing in the Exchange Act or the Securities Act of 1933 ("Securities Act") remotely—let alone clearly—authorizes the SEC to regulate as securities the broad range of tokens covered by the Complaint.  The major questions doctrine therefore requires dismissal.

The SEC's assertion of authority over tokens pursuant to Depression-era securities statutes is precisely the kind of "claim[] to discover in a long-extant statute an unheralded power to regulate 'a significant portion of the American economy'" that the Supreme Court has repeatedly rejected in its major-question jurisprudence.  *Utility Air*, 573 U.S. at 324 (quoting *Brown & Williamson*, 529

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 10
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1    U.S. at 159); *see West Virginia*, 142 S. Ct. at 2610.  The problem is not simply that Congress never

2    envisioned tokens as securities when it enacted those statutes nearly a century ago.  "[S]ometimes

3    old statutes may be written in ways that apply to new and previously unanticipated situations." *West*

4    *Virginia*, 142 S. Ct. at 2623 (Gorsuch, J., concurring).  "But an agency's attempt to deploy an old

5    statute focused on one problem to solve a new and different problem may also be a warning sign

6    that it is acting without clear congressional authority."  *Id.*; *see U.S. Telecom*, 855 F.3d at 417-18

7    (Kavanaugh, J., dissenting from denial of rehearing en banc) (rejecting agency's attempt to impose

8    common-carrier status on Internet service providers under a 1934 statute).  As the Court recently

9    put it, "'enabling legislation' is generally not an 'open book to which the agency may add pages and

10   change the plot line.'"  *West Virginia*, 142 S. Ct. at 2609 (brackets and citation omitted).

11          That is just what the SEC is attempting here.  Tokens are not a new kind of security; they

12   are different in kind from anything the Commission has ever considered a security.  *See NFIB*, 142

13   S. Ct. at 666 (finding a lack of clear congressional authorization where the agency had never before

14   adopted a regulation "of th[e] kind" at issue).  They bear far more resemblance to commodities or

15   property than to the "*investments*" that were the focus of "Congress' purpose in enacting the

16   securities laws." *Reves v. Ernst & Young*, 494 U.S. 56, 61 (1990); *see, e.g.*, *United Hous. Found.,*

17   *Inc. v. Forman*, 421 U.S. 837, 852-53 (1975) ("[W]hen a purchaser is motivated by a desire to use

18   or consume the item purchased . . . [,] the securities laws do not apply."); *see also* pp. 12-13, *infra*

19   (discussing efforts to regulate tokens as commodities).  The SEC's effort to shoehorn tokens into its

20   statutory authority to regulate securities is thus akin to the EPA's trying to regulate greenhouse gases

21   as air pollutants or the FDA's trying to regulate tobacco as a drug or device—textbook examples of

22   "agencies asserting highly consequential power beyond what Congress could reasonably be

23   understood to have granted."  *West Virginia*, 142 S. Ct. at 2609 (citing *Utility Air* and *Brown &*

24   *Williamson*); *cf. Forman*, 421 U.S. at 859 n.26 ("The determination of whether and in what manner

25   federal regulation may be required for housing transactions, where the characteristics of an

26   investment in securities are not present, is better left to the Congress, which can assess both the costs

27   and benefits of any such regulation.").

28

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 11
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

As in other major question cases, the SEC's novel assertion of authority is also undermined by its recent prior "disavowal" that it had such authority.  *Brown & Williamson*, 529 U.S. at 146; *see Biden*, 600 U.S. at ___ (slip op. at 22-23); *Alabama Ass'n of Realtors v. HHS*, 141 S. Ct. 2485, 2488 (2021) (per curiam).  Shortly after he took office, for example, SEC Chair Gary Gensler told the House Financial Services Committee that "it is only Congress that could really address" trading of tokens on exchanges, "because right now the exchanges trading in these crypto assets do not have a regulatory framework . . . at the SEC."  *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide*, *Part III*, 117th Cong. (May 6, 2021), https://www.congress.gov/117/chrg/CHRG-117hhrg44837/CHRG-117hhrg44837.pdf.

The Commission has now done an about-face, purportedly discovering the very authority it previously confessed it lacked.  Yet there has been no intervening action by Congress, and at least one sitting Commissioner has acknowledged that, "if we seriously grappled with the legal analysis and our statutory authority . . . we would have to admit that we likely need more, or at least more clearly delineated, statutory authority to regulate certain crypto tokens and to require crypto trading platforms to register with us."  Hester M. Peirce, *Outdated: Remarks Before the Digital Assets at Duke Conference*, SEC (Jan. 20, 2023) [hereinafter, "Peirce Speech"], https://www.sec.gov/news/speech/peirce-remarks-duke-conference-012023.

Other federal agencies, moreover, have asserted their own authority to regulate tokens traded on exchanges.  The Commodity Futures Trading Commission ("CFTC"), for example, has brought multiple enforcement actions under the Commodity Exchange Act on the premise that tokens can be regulated as commodities, *see* Compl. ¶¶ 7-10, *CFTC v. Zhao.*, No. 1:23-cv-01887 (N.D. Ill. Mar. 27, 2023), ECF No. 1; Am. Compl. ¶¶ 11-12, *CFTC v. Bankman-Fried*, No. 22-cv-10502 (S.D.N.Y. Dec. 13, 2022), ECF No. 13, and a CFTC commissioner recently criticized the SEC for bringing an enforcement action asserting that tokens are securities, *see Statement of Commissioner Caroline D. Pham on* SEC v. Wahi, CFTC (July 21, 2022), https://www.cftc.gov/PressRoom/SpeechesTestimony/phamstatement072122.  More specifically, the CFTC Chair has stated that Ether—the second-most prominent token on the market—is a

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 12
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

commodity subject to regulation by the CFTC, not a security subject to regulation by the SEC. *See, e.g.*, Rostin Behnam, *Budget Hearing—Fiscal Year 2024 Request for the CFTC: Hearing Before the U.S. House of Representatives Subcomm. on Agriculture, Rural Dev., Food and Drug Admin. & Related Agencies* 1:39:00-1:40:17, 118th Cong. (Mar. 28, 2023), https://www.congress.gov/event/118th-congress/house-event/115587.  Yet the SEC Chair recently told the House Financial Service Committee that he could not determine whether Ether is a security subject to registration. *Oversight of the SEC: Hearing Before the Fin. Serv. Comm.* 44:15-45:41, 118th Cong. (Apr. 18, 2023).  As one federal judge summarized, "[r]egulators themselves cannot seem to agree as to whether cryptocurrencies are commodities that may be subject to regulation by the CFTC, or whether they are securities . . . subject to securities laws, or neither, or even on what criteria should be applied in making the decision.  This uncertainty has persisted despite the fact that the cryptocurrency exchanges have been around for a number of years." *In re Voyager Dig. Holdings, Inc.*, 649 B.R. 111, 119 (Bankr. S.D.N.Y. Mar. 11, 2023).  All of that undermines the premise that the SEC actually has the "clear congressional authorization" required to regulate tokens as securities. *West Virginia*, 142 S. Ct. at 2609.[6]

As in other major-question cases, the SEC's assertion of authority is also fundamentally "inconsistent" with the statutory "structure and design." *Utility Air*, 573 U.S. at 320-21.  Federal statutes and regulations require securities issuers to periodically disclose, for example, information about their management teams and financial performance. *See, e.g.*, 15 U.S.C. §§ 77g, 77aa.  While those requirements fit naturally with paradigmatic securities like stocks and bonds—which derive their value from the issuer's performance, no matter how many times the assets are transferred on

---

[6]   In addition to the uncertainty exhibited by the turf war between the SEC and CFTC, the Treasury Department has asserted authority to regulate crypto exchanges not registered with the SEC as "[m]oney services business[es]." 31 C.F.R. § 1010.100(ff); *see, e.g.*, Dep't of Treas., *The Financial Crimes Enforcement Network Proposes Rule Aimed at Closing Anti-Money Laundering Regulatory Gaps for Certain Convertible Virtual Currency and Digital Asset Transactions* (Dec. 18, 2020), https://home.treasury.gov/news/press-releases/sm1216 (detailing proposed reporting regulations on virtual currency transactions for money services businesses).

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 13
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

secondary markets—the disclosure requirements make little sense in the context of decentralized tokens, which are by design not dependent on the leadership or performance of the initial developer. A customer purchasing a token to serve as currency in digital transactions, for example, has no more use for the developer's financial-performance disclosures than a used-car purchaser would have for the financial-performance disclosures of the manufacturer.   SEC officials themselves have acknowledged that "[a]pplying the disclosure regime of the federal securities laws to the offer and resale of Bitcoin . . . [and] Ether would seem to add little value."  Hinman Speech, *supra*.

Similarly, the securities-laws requirements mandating the separation and registration of national securities exchanges, broker-dealers, and clearing agencies are incompatible with the basic design of crypto, which exists to facilitate direct and decentralized transactions without the presence of the various intermediaries that the securities-law requirements contemplate.   Applying such requirements to crypto assets would defeat the entire purpose of decentralized blockchain transactions, and is the regulatory equivalent of trying to force a square peg into a round hole; they "simply do not fit."  *Brown & Williamson*, 529 U.S. at 143.  Indeed, the practical result of applying the existing securities-regulation framework to crypto assets would likely be to ban the assets, because compliance is infeasible.  *See, e.g.*, Comm. on Cap. Mkts. Regul., *Cryptoasset Trading Platforms Cannot Register as Securities Exchanges* 1 (June 6, 2023), https://capmktsreg.org/wp-content/uploads/2023/06/CCMR-Crypto-Exchanges-Cannot-Register-With-the-SEC-06-06-23.pdf (explaining that it is "impossible for cryptoasset trading platforms to do what the SEC now insists that they do—that is, registering and operating in compliance with the regulatory framework for securities exchanges"); Rodrigo Seira et al., *Lessons from Crypto Projects' Failed Attempts to Register with the SEC* (Mar. 23, 2023), https://policy.paradigm.xyz/writing/secs-path-to-registration-part-ii (explaining that "projects that [have] attempted to come into compliance with the SEC's registration requirements expended great effort and resources yet ultimately most of them failed").  Yet there is no evidence that Congress meant to *ban* crypto, let alone that it *clearly* directed that result.  *See Brown & Williamson*, 529 U.S. at 159 (rejecting theory that would have required FDA to ban tobacco).

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 14
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

Finally, Congress's own ongoing legislative processes to determine the proper regulation of crypto assets further indicate that the Commission lacks the authority it claims.  *See West Virginia*, 142 S. Ct. at 2610, 2614.  Congress has recently considered multiple pieces of legislation that would grant authority to federal agencies to regulate crypto assets in various ways.  *See, e.g.*, Lummis-Gillibrand Responsible Financial Innovation Act, S. 4356, 117th Cong. (2022); Digital Commodities Consumer Protection Act of 2022, S. 4760, 117th Cong. (2022); *see also* Digital Asset Market Structure Discussion Draft, House Comm. on Fin. Servs. & House Comm. on Agric. (2023), https://financialservices.house.gov/uploadedfiles/market_structure_bill_section_by_section.pdf.  That "earnest and profound debate" would be unnecessary if the Securities Act and the Exchange Act already provided that the SEC can regulate tokens as securities.  *West Virginia*, 142 S. Ct. at 2614 (citation omitted).  The Complaint should accordingly be dismissed.

## II.   The SEC Has Not Alleged Facts To Support The Required Element Of Its Claims That Securities Transactions Occurred On The Bittrex Platform

Even if the SEC had statutory authority to apply the securities laws to tokens, the Complaint would require dismissal for a separate reason:  each of the claims requires the Commission to prove that "securities" transactions took place on the Bittrex Platform, but the Complaint fails to allege facts to support that any such transactions occurred.  The SEC instead pleads facts regarding whether *the initial offerings* of certain tokens constituted investment contracts and thus securities.  But the SEC does not allege that any transactions as part of the developer's initial offerings took place on the Bittrex Platform.  And the Commission does not provide any factual allegations to suggest that the tokens were offered as investment contracts at the time of any secondary market transactions on the Bittrex Platform.  The Complaint accordingly fails to state a claim on which relief can be granted.

### A.   The SEC's Claims Require Allegations That "Investment Contracts" Were Traded On The Bittrex Platform

A required element of each of the SEC's claims is that securities transactions occurred on the Bittrex Platform. Section 5 of the Exchange Act's registration requirement for exchanges applies only where an organization "constitutes, maintains, or provides a market place or facilities for

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 15
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

bringing together **purchasers and sellers of securities**." 15 U.S.C. § 78c(a)(1) (emphasis added); *see* 15 U.S.C. § 78e (requiring registration for exchanges that "effect any transaction in a security"). Section 15(a) of the Exchange Act's registration requirement for brokers and dealers only applies where the person is "engaged in the business of effecting **transactions in securities** for the account of others." 15 U.S.C. § 78c(a)(4) (emphasis added); *see* 15 U.S.C. § 78o(a). And Section 17A(b) of the Exchange Act's registration requirement for clearing agencies applies only where such person acts as an intermediary in making payments or custodian or facilitator of the settlement of "**securities transactions**." 15 U.S.C. § 78c(a)(23)(A) (emphasis added); *see* 15 U.S.C. § 78q-1(b).

Section 3(a)(10) of the Exchange Act defines "security" to include stocks, notes, treasury stocks, security-based swaps, bonds, certificates of deposit for a security, and approximately 15 other items—but not "currency," which it expressly excludes. 15 U.S.C. § 78c(a)(10). Among the items included in the definition are "investment contracts," *id.*—the only aspect of the definition that the SEC asserts is implicated here. *See* Compl. ¶ 110 ("[T]he Bittrex Platform has made available for trading crypto assets that were offered and sold as investment contracts, and thus securities, under Section 3(a)(10) of the Exchange Act . . . .").

The Exchange Act does not define "investment contract," but the Supreme Court construed the term (which also appears in the Securities Act) in *SEC v. W.J. Howey Co.*, 328 U.S. 293 (1946) and subsequent cases. In *Howey*, the Court considered whether "an offering of units of a citrus grove development coupled with a contract for cultivating, marketing and remitting the net proceeds to the investor" constituted an investment contract. *Id.* at 294. Relying on the meaning of "investment contract" in the state blue sky laws that predated the Securities Act, the Court held that "an investment contract for purposes of the Securities Act means a contract, transaction or scheme whereby a person invests his money in a common enterprise and is led to expect profits solely from the efforts of the promoter or a third party." *Id.* at 298-99. The Court concluded that the offering at issue in *Howey* was an investment contract because—through the combination of "land sales contracts, warranty deeds and service contracts"—the purchasers "provide the capital and share in

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 16
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

the earnings and profits," while "the promoters manage, control and operate the enterprise" pursuant to their ongoing obligations in the service contracts. *Id.* at 300.

As the statutory text indicates and *Howey* confirms, the existence of a contract—namely one in which a promoter has continuing obligations to an investor—is an indispensable element of an "investment contract" as defined by the securities laws. Many decisions construing the state statutes that *Howey* relied on reinforce that understanding. *See, e.g.*, *State v. Heath*, 153 S.E. 855, 857 (N.C. 1930) ("The term 'investment contract' . . . implies the apprehension of an investment *as well as of a contract*." (emphasis added)); *Prohaska v. Hemmer-Miller Dev. Co.*, 256 Ill. App. 331, 334-35 (1930) (sale of land *plus* promise to harvest crops on it); *see also State v. Robbins*, 185 Minn. 202, 204-05 (1932) (finding investment contract based on the sale of muskrat breeding pairs *plus* promise to rear pairs until later sold for fur); *Kerst v. Nelson*, 171 Minn. 191, 193-95 (1927) (sale of land *plus* promise to cultivate vineyard and harvest crops).

Likewise, all Supreme Court decisions applying *Howey* to find that there was an "investment contract" and thus a security have involved a contract in which an offeror has continuing obligations to an investor. *See, e.g.*, *SEC v. Edwards*, 540 U.S. 389, 395 (2004) (finding that a payphone sale and separate phone maintenance agreement was an investment contract); *Tcherepnin v. Knight*, 389 U.S. 332, 338-39 (1967) (a "withdrawable capital share" in a corporation that afforded voting and dividend rights was an investment contract). The same is true for all cases in which the Ninth Circuit has found that an investment contract exists. *See, e.g.*, *SEC v. Rubera*, 350 F.3d 1084, 1087 (9th Cir. 2003) (telephone investment program in which investors would purchase a telephone and enter into an agreement); *Koch v. Hankins*, 928 F.2d 1471, 1481 (9th Cir. 1991) (investments in general partnerships along with an agreement for growing jojoba).

At the same time, the Supreme Court and the Ninth Circuit have consistently rejected assertions—including by the SEC—that investment contracts exist when those factors are not present. *See, e.g.*, *Forman*, 421 U.S. at 858 ("What distinguishes a security transaction—and what is absent here—is an investment where one parts with his money in the hope of receiving profits from the efforts of others, and not where he purchases a commodity for personal consumption or

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 17
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

living quarters for personal use."); *Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am. v. Daniel*, 439 U.S. 551, 562-66 (1979) (finding that an employee pension plan was not a security where "profit would depend primarily on the employee's efforts to meet the vesting requirements, rather than the fund's investment success"); *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1131-32 (9th Cir. 2013) (affirming dismissal where "[t]he economic reality . . . is that the[ ] two transactions were distinct"); *De Luz Ranchos Inv. Ltd. v. Coldwell Banker & Co.*, 608 F.2d 1297, 1301 (9th Cir. 1979) ("[W]e cannot say that [defendant] provided the essential managerial efforts affecting the success of [plaintiff]'s enterprise, as required under the final element of the Howey test.").  In short, a transaction can be an "investment contract" subject to the securities laws if—and only if—it involves a contract requiring the offeror to undertake some continuing obligations that can yield proceeds for the investor.

### B.     The SEC Fails To Allege That Any Investment Contracts Existed As Part Of Any Token Sales On The Bittrex Platform

Though lengthy, the Complaint nowhere alleges that any token was sold *as* an investment contract *on* the Bittrex Platform; indeed, the Complaint makes no specific allegation that any transactions occurred on the Bittrex Platform at all, even though that is a required element of all of the Commission's claims.  *See* p. 16, *supra*.  Rather, the SEC makes extensive allegations about the *initial offerings* of each of six specified tokens, *see, e.g.*, Compl. ¶¶ 143, 146-48, 150-53, 160, 173-77, 182, 195-98, 200-04, 207-09, 212-13, 216-19, 220-21, 223-24, 227-29, and states that the tokens were later "available" or "made available for trading" on the Bittrex Platform, *see id.* ¶¶ 141, 144, 161, 178, 210.  Those allegations, however, conspicuously provide no facts to support the claim that the tokens were traded *as investments contracts on the Bittrex Platform*.

The SEC's attempt to establish that the tokens were investment contracts when traded on the Bittrex Platform by relying exclusively on their asserted status as investment contracts at their initial offering is like trying to establish a defendant's current residency by alleging only that he was born in the jurisdiction.  The Commission cannot overcome that defect by simply asserting without any facts that a token was an investment contract "[f]rom the time of its offering and *continuing through*

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 18
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

*the Relevant Period*." *Id.* ¶¶ 145, 162, 179, 199, 211, 222 (emphasis added). At best, such assertions amount to legal conclusions that cannot overcome a motion to dismiss. *See, e.g.*, *Iglesia Cristiana Luz y Verdad v. Church Mut. Ins. Co.*, No. 15-cv-05621-RMW, 2016 WL 692839, at *4 (N.D. Cal. Feb. 19, 2016) (allegations representing "mere legal conclusions that a contract existed . . . will be insufficient to survive a motion to dismiss." (alteration in original) (citation omitted)).

The SEC's repeated use of the passive voice highlights its pleading failure. Who offered and sold the alleged investment contracts on the Bittrex Platform? What are the terms of those contracts? Was there a contract relating to an actual transaction on the platform, or were the tokens just "available" on the platform? Even after six years of investigating, the SEC never says. *See Rogers v. Assur. IQ, LLC*, No. 2:21-cv-00823-RL, 2023 WL 2646468, at *4 (W.D. Wash. Mar. 27, 2023) (partially granting motion to dismiss where "Plaintiffs chose to use the passive voice" for "information [that] is known to Plaintiffs without any discovery and should be simple to include").

The SEC seems to assume that once a token is initially offered as an investment contract, it necessarily remains an investment contract in all subsequent transactions. But that bootstrapping theory has no basis in law or common sense. *See, e.g.*, Peirce Speech, *supra* ("[A]n initial fundraising transaction involving a crypto token can create an investment contract, but the token itself is not necessarily the security even if it is sold on the secondary market."). At the most basic level, a token is a line of code that has use on certain applications. Rather, selling such a line of code is not selling a contract, let alone an investment contract within the meaning of the securities laws. Selling such a line of code is instead akin to selling any other asset or "commodity for personal consumption." *Forman*, 421 U.S. at 858. And "when a purchaser is motivated by a desire to use or consume the item purchased . . . the securities laws do not apply." *Id.* at 852-53.[7]

---

[7]   A federal judge addressing the parallel allegations against Binance recently observed that, once tokens are available "on the platform[] and people c[an] trade them, sell them, [and] repurchase them . . . people aren't responding to the initial offering, they're responding to the asset." T.R.O Hr'g Tr. 14-15, *SEC v. Binance Holdings Ltd.*, No. 23-cv-01599 (D.D.C. June 13, 2023).

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 19
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

The allegation that a token made available on the Bittrex Platform was previously offered as an investment contract does not change that analysis.[8]  When one Bittrex Platform user sells a token to another Bittrex Platform user, the developer that once distributed the token has no contractual relationship with the buyer, just as the dealership that once sold a new car to a customer generally has no contractual relationship with a subsequent purchaser who buys the car on eBay or Craigslist.  *See, e.g.*, *Contract*, *Black's Law Dictionary* (11th ed. 2019) (defining a "contract" as "an enforceable agreement between two or more parties to do or not to do a thing or set of things"); *12909 Cordary, LLC v. Berri*, No. 8:22-cv-01748-JWH-JDE, 2023 U.S. Dist. LEXIS 67893, at *6 (C.D. Cal. 2023) ("[T]o show the existence of a contract a claimant must show a 'meeting of the minds' between the contracting parties." (citation omitted)).  At a minimum, the SEC does not allege otherwise.  Nor does the SEC allege that secondary-market purchasers of tokens are in contractual privity with the issuers of those tokens.  *See, e.g.*, *Fabrinet USA, Inc. v. Micatu, Inc.*, No. 20-CV-00382-VKD, 2020 WL 3414657, at *3 (N.D. Cal. June 22, 2020) ("Privity of contract is a doctrine of contract law that states that only parties to a contract, hence those in privity to it, have rights or liabilities under the contract." (citation omitted)).

More fundamentally, the SEC seems to conflate the token's alleged *role in an initial investment contract* with the theory that the token *is itself an investment contract*.  But that makes no sense and has no basis in precedent.  The oranges grown in *Howey* were part of an investment contract by virtue of the surrounding features of the transaction:  the contracts to provide maintenance and share proceeds.  *Howey*, 328 U.S. at 299-300.  But the oranges were not *themselves* investment contracts; if the oranges were later resold by a grocery store or roadside stand, the grocer or stand owner would not be selling investment contracts subject to the securities laws.  The SEC's theory fails to account for that "commonsense understanding" of "economic realities," which is the

---

[8]   Bittrex disputes that any of the tokens traded on its platform were offered as investment contracts and reserves the right to contest the SEC's contrary allegations under *Howey*.  For purposes of this motion, however, dismissal is required even if the tokens could be considered investment contracts at the time of their initial offering.

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 20
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1   lynchpin of the investment-contract analysis.  *Edwards*, 540 U.S. at 396-97; *Forman*, 421 U.S. at

2   849.[9]

3       Indeed, the SEC itself has recognized that the allegation that a token is at one point part of

4   an investment contract does not forever turn that token into a security.  In 2018, then-Director of the

5   SEC Division of Corporation Finance William Hinman acknowledged that in at least some

6   circumstances, "a digital asset that was originally offered in a securities offering" could "be later

7   sold in a manner that does not constitute an offering of a security."  Hinman Speech, *supra*.  In

8   particular, he explained, "[i]f the network on which the token or coin is to function is sufficiently

9   decentralized—where purchasers would no longer reasonably expect a person or group to carry out

10  essential managerial or entrepreneurial efforts—the assets may not represent an investment

11  contract."  *Id.*; *see id.* ("[T]he token—or coin or whatever the digital information packet is called—

12  all by itself is not a security, just as the orange groves in *Howey* were not.").

13      Critically, the Ninth Circuit has likewise rejected a "per se rule" that assets once offered as

14  investments contracts must always remain investment contracts.  *Hocking v. Dubois*, 885 F.2d 1449,

15  1462 (9th Cir. 1989) (en banc).  In *Hocking*, the en banc panel considered whether the secondary

16  sale of a condominium, sold at the same time as a rental pool agreement, was a security.  Numerous

17  courts had held that where a developer initially sells condominiums and offers a rental pool

18

19  _____

20      [9]   To be sure, some financial instruments, such as stocks or bonds, may retain their initial
    character as securities even after being resold many times on the secondary market.  But that is not
21  because of any general once-a-security-always-a-security principle.  It is because the basic nature
    of a stock or bond does not change no matter how many times it is resold:  it remains an entitlement
22  to a particular benefit (dividends, voting rights, interest, etc.) from the issuer.  *See Landreth Timber
    Co. v. Landreth*, 471 U.S. 681, 686 (1985) (summarizing the "characteristics usually associated with
23  common stock as (i) the right to receive dividends contingent upon an apportionment of profits; (ii)
    negotiability; (iii) the ability to be pledged or hypothecated; (iv) the conferring of voting rights in
24  proportion to the number of shares owned; and (v) the capacity to appreciate in value." (citation
    omitted)).  Stocks and bonds are also expressly defined as securities under the federal securities
25  laws. 15 U.S.C. § 78c(a)(10).  Tokens are not.  Tokens, under the SEC's theory, are only securities
    because they are investment contracts.  Thus, an assessment of whether a token is sold as an
26  investment contract must occur at each transaction because the token is not, definitionally, itself a
    security.
27

28
   QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

agreement then those agreements may together make up an investment contract.  *See, e.g.*, *Cameron v. Outdoor Resorts of Am., Inc.*, 608 F.2d 187, 192-93 (5th Cir. 1979) (holding "condominium campsites as sold in multiple-unit blocks . . . constituted securities").  In *Hocking*, the transaction was not such an initial sale of a condominium by the developer; the condominium was sold separately, and the real estate broker offered the condominium with a rental pool agreement option with a third party.  The original three-judge panel had held that such a secondary sale of a condominium (i.e., by someone other than the condominium developer) was an investment contract because a "rental pool 'option' exists."  *Hocking*, 885 F.2d at 1462.  The en banc panel rejected that reasoning, holding that:

> Such a per se rule would be ill-suited to the examination of the economic reality of *each* transaction required by *Howey*.  In the context of isolated resales, each case requires an analysis of how the condominium was promoted to the investor, including any representations made to the investor, and the nature of the investment and the collateral agreements.

*Id.* (emphasis added).

In the case of the "isolated resales," *id.*, on the Bittrex Platform, the analysis compelled by *Hocking* (applying *Howey*) is straightforward.  Because the SEC does not allege that—at the time they were made available on the Bittrex Platform—tokens were "promoted to" the purchasers as investment contracts or that there were any other "representations" or "collateral agreements" giving rise to an investment contract, *id.*, the Complaint does not state a claim that the transactions by which tokens were sold on the Bittrex Platform were investment contracts, and it should accordingly be dismissed.[10]

---

[10]  The SEC errs in alleging that Bittrex's efforts to remove certain public statements about tokens traded on its platform were somehow nefarious.  *See, e.g.*, Compl. ¶¶ 112-129.  The fact that Bittrex undertook a review of the tokens it listed to ensure that transactions on its platform were not securities transactions shows its substantial efforts at *complying* with the registration requirements—not defying them.  It is inappropriate for the SEC to allege that such compliance efforts are somehow wrong.

1  **III.   The SEC Fails To Provide Adequate Notice**

2          The Complaint should also be dismissed because the SEC fails to provide fair notice in

3  multiple ways:  the Complaint fails to fully describe the scope of the conduct it alleges is illegal in

4  this case, and more fundamentally, the SEC has failed to provide notice about the tokens it asserts

5  must be treated as securities.

6          ***A.   The Complaint Fails To Allege The Full Scope Of The SEC's Claims***

7          The SEC alleges that Bittrex "made available . . . for trading" more than 300 different tokens

8  in the almost ten years that the SEC defines as the Relevant Period, and that Bittrex's total $1.3

9  billion dollars of revenue are at issue in this case.  Compl. ¶¶ 67, 70.  Yet the SEC identifies just six

10  tokens that it alleges represent "examples" comprising a "non-exhaustive list" of tokens that were

11  traded as investment contracts (and thus securities) on the Bittrex Platform.  *Id.* ¶¶ 110, 141.

12  Defendants and the Court are thus kept in the dark regarding the full scope of the SEC's claims—

13  whether this is a case about $1.3 billion in revenues or only the commissions related to the six

14  identified tokens, and whether or which of the 300 tokens beyond the six that the SEC alleges Bittrex

15  made available for trading will at some point be alleged to have been sold as investment contracts.

16          That pleading failure is critical because, as explained above, whether or not each token was

17  allegedly offered as an investment contract is a central element to the SEC's claims.  This is

18  accordingly not a case where a plaintiff has alleged sufficient facts regarding a defendant's liability,

19  but offers insufficient allegations regarding the scope of *damages*.  Rather, the SEC has failed to

20  plead the underlying *elements* of its claims.  An appropriate analogy is a trademark plaintiff's

21  alleging that a defendant infringed on a few "example" trademarks, and "maybe more."  Courts do

22  not allow such pleading by surprise, instead requiring that plaintiffs plead the facts in support of

23  each element of their claims, identifying each and every trademark they allege has been infringed.

24  *See, e.g.*, *Louisiana Pac. Corp. v. James Hardie Bldg. Prods., Inc*., No. C12-3433 SC, 2012 WL

25  5520394, at *1 (N.D. Cal. Nov. 14, 2012) ("The Court finds that the Complaint lacks the requisite

26  specificity since it does not identify every trademark which was allegedly infringed."); *Adobe Sys.*

27  *v. Software Speedy*, No. C-14-2152 EMC, 2014 WL 7186682, at *6 (N.D. Cal. Dec. 16, 2014)

28

(granting a motion for a more definitive statement as "general references to all of [Plaintiff's] marks and a general allegation that Defendants have infringed its 'marks' or 'copyrights' is insufficient").[11] So too here, the SEC should be required to plead every element of its claims, including identifying every alleged token that was offered as an investment contract in purported secondary-market transactions.

The SEC's pleading omissions, compounded by the individualized nature of each token, deprive Defendants of a meaningful opportunity to answer the Complaint.  A pleading fails to provide fair notice when it is "so vague or ambiguous that the party cannot reasonably prepare a response."  Fed. R. Civ. P. 12(e); *see Twombly*, 550 U.S. at 555 (a pleading must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957))).  To properly refute the elements of the SEC's claims, Defendants must provide an individualized answer for each token to show that the features of the specific token do not meet the definition of an investment contract offered in these secondary market transactions.  Given the unique nature of each token, this cannot be accomplished with blanket statements; therefore, it is necessary that the SEC provide a defined and exhaustive list of tokens at issue.  The Commission's failure to do so will make it impossible for the Court to determine the appropriate scope of discovery or length of trial.  *See* Fed. R. Civ. P. 26(b)(1) (limiting discovery to that which is "proportional to the needs of the case, considering . . . the amount in controversy.").

**B.      *The SEC Fails To Provide Fair Notice Of The Alleged Securities Law Violations***

More fundamentally, the SEC violates the Due Process Clause by failing to provide Defendants with fair notice that the conduct for which it now seeks liability was in fact prohibited.  "[C]larity in regulation is essential to the protections provided by the Due Process Clause."  *FCC v.*

---

[11]   A requirement that a complaint contain an exhaustive list is also a component of trade secret cases.  *See, e.g.*, *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, No. 2:20-cv-00235-KJM-DB, 2020 WL 4937129, at *5 (E.D. Cal. Aug. 24, 2020) ("[T]he complaint includes a non-exhaustive list of trade secrets; to the extent such a list sweeps in a raft of unspecified assets, it falls short of providing defendant the contours of the trade secrets claim.").

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 24
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1   *Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012).  A federal agency violates the Due Process

2   Clause when it "fails to provide a person of ordinary intelligence fair notice of what is prohibited."

3   *Id.* (citation omitted).  Adequate notice is particularly important when the government stakes out a

4   new position on liability via enforcement action, because regulated parties cannot be expected to

5   "divine the agency's interpretations in advance or else be held liable when the agency announces its

6   interpretations for the first time in an enforcement proceeding."  *Christopher v. SmithKline Beecham*

7   *Corp.*, 567 U.S. 142, 158-59 (2012); *see Bittner v. United States*, 143 S. Ct. 713, 725 (2023).

8       The SEC has violated those core due-process principles here.  The Commission has

9   systematically and seemingly strategically chosen to avoid providing any clarity in regulation as to

10   cryptocurrency, creating what one of its own Commissioners has called "arbitrary and destructive

11   results for crypto projects and purchasers."  Peirce Speech, *supra*.  As noted above, the SEC Chair

12   in 2021 expressly disclaimed authority to regulate exchanges trading tokens, stating that "right now

13   the exchanges trading in these crypto assets do not have a regulatory framework . . . at the SEC."

14   *Game Stopped*, *supra*.  That same year, the SEC approved Coinbase's application to become a public

15   company operating (among other things) a token exchange.  SEC, *Notice of Effectiveness for*

16   *Coinbase Global, Inc.* (Apr. 1, 2021),

17   https://www.sec.gov/Archives/edgar/data/1679788/999999995210001252/xslEFFECTX01/primar

18   y_doc.xml.  As recently as late January 2023, the Commission refused to assert authority to regulate

19   secondary-market sales of tokens, leading a federal judge to express "frustrat[ion]" with the SEC's

20   position.  Tr. of Mot. Hr'g 26, *SEC v. LBRY, Inc.*, No. 1:21-cv-260-PB (D.N.H. Jan. 30, 2023), ECF

21   No. 105; *see id.* ("I can be absolutely clear I'm not going to do anything to restrict resales of [the

22   token at issue] in this case, because the SEC had its chance to argue that in front of me, and they are

23   not arguing it.").

24       Yet after *six* years of investigating Bittrex—roughly *three times* the average length of an

25   SEC investigation—the Commission in April 2023 brought this action (and soon brought two more

26   enforcement actions against other token exchanges), based on a purported "regulatory framework"

27   the SEC Chair had previously told Congress did not exist "at the SEC".  That reversal has created

28

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 25
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

even further layers of uncertainty.  Of the 23 tokens named by the SEC as securities across the three complaints, 14 tokens (60%) traded on all three token exchanges.  Yet each of those 14 tokens is identified as a security by the SEC in only some complaints but not others.  For instance, in its complaint against Coinbase, the SEC labeled tokens ADA, AXS, FIL, MATIC, and SAND as securities.  *See* Compl. ¶ 114, *SEC v. Coinbase, Inc.*, No. 1:23-cv-04738 (S.D.N.Y. June 6, 2023), ECF No. 1.  But those same tokens were all traded on Bittrex, and they are not named in this Complaint.  Nobody knows why.

It appears that the Commission is deliberately gaming the pleadings by dribbling out a baffling Venn diagram of tokens that it alleges (at some times but not others) are investment contracts.  That regulation-by-obfuscation approach is further reflected in Chair Gensler's recent House testimony, in which he refused to take a position on whether Ether is a security, *see* p. 13, *supra*, even though SEC officials disclaimed that possibility years ago, *see* Hinman Speech, *supra*, and even though the CFTC has specifically stated that Ether is a commodity subject to regulation by the CFTC, *see* p. 13, *supra*.  The SEC's conduct has effectively made it impossible for market participants to know whether their conduct is lawful.  "Indeed, it is not unlike the practice of Caligula, who reportedly 'wrote his laws in a very small character, and hung them up upon high pillars, the more effectually to ensnare the people.'"  *Flores-Figueroa v. United States*, 556 U.S. 646, 658 (2009) (Scalia, J., concurring in part) (quoting 1 W. Blackstone, Commentaries on the Laws of England 46 (1765)).

The Due Process Clause protects against such standardless uncertainty.  The SEC's claims should accordingly be dismissed with prejudice.  In the alternative, Defendants request that the SEC provide a more definitive statement with a comprehensive list of the tokens at issue in this dispute.

### IV.   The Control Person Liability Claim Against Shihara Should Be Dismissed

To establish Shihara's liability as a purported control person, the SEC must establish: "(1) a primary violation of federal securities law, and (2) that the defendant exercised actual power or control over the primary violator."  *No. 84 Employer-Teamster Joint Council Pension Tr. Fund v. Am. West Holding Corp.*, 320 F.3d 920, 945 (9th Cir. 2003) (internal quotations omitted); *see also*

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 26
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  *SEC v. Todd*, 642 F.3d 1207, 1223 (9th Cir. 2011).  Here, for the reasons set forth above, the SEC

2  has failed to state a claim against Bittrex for a primary violation of the securities laws.  Accordingly,

3  the SEC's control person claim against Shihara likewise should be dismissed.  *See, e.g.*, *Zucco*

4  *Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009) ("Section 20(a) claims may be

5  dismissed summarily, however, if a plaintiff fails to adequately plead a primary violation of section

6  10(b)."); *see also Nacif v. Athira Pharma, Inc.*, No. C21-861 TSZ, 2022 WL 3028579, at *19 (W.D.

7  Wash. July 29, 2022) ("Because plaintiffs' claim under Exchange Act § 10(b) has been dismissed,

8  plaintiffs' claim under Exchange Act § 20(a), which potentially imposes derivative liability on each

9  person who controls a § 10(b) violator, must also be dismissed[.]"); *Callan v. Motricity Inc.*, No.

10  C11-1340 TSZ, 2013 WL 195194, at *26 (W.D. Wash. Jan. 17, 2013) (dismissing control person

11  liability claims because plaintiff did not adequately allege primary violations of the securities laws).

12  <u>**CONCLUSION**</u>

13  For the reasons set forth above, the Court should dismiss the Complaint as to Bittrex and

14  Shihara in its entirety, with prejudice.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 27
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

1  Dated: June 30, 2023

2                                         */s/ Alicia Cobb*

3                                         Alicia Cobb, WSBA #48685
                                          QUINN EMANUEL URQUHART &
4                                         SULLIVAN, LLP
                                          1109 First Avenue, Suite 210
5                                         Seattle, Washington 98101
                                          Phone (206) 905-7000
6                                         Fax (206) 905-7100
                                          aliciacobb@quinnemanuel.com
7
                                          Michael Liftik (admitted *pro hac vice*)
8                                         Christopher Michel (admitted *pro hac vice*)
                                          Robert Zink (admitted *pro hac vice*)
9                                         Kurt Wolfe (admitted *pro hac vice*)
                                          QUINN EMANUEL URQUHART &
10                                        SULLIVAN, LLP
                                          1300 I Street NW, Suite 900
11                                        Washington, D.C. 20005
                                          Phone (202) 538-8000
12                                        Fax (202) 538-8001
                                          michaelliftik@quinnemanuel.com
13                                        christophermichel@quinnemanuel.com
                                          robertzink@quinnemanuel.com
14                                        kurtwolfe@quinnemanuel.com

15                                        Stacylyn Doore (admitted *pro hac vice*)
                                          QUINN EMANUEL URQUHART &
16                                        SULLIVAN, LLP
                                          111 Huntington Avenue, Suite 520
17                                        Boston, Massachusetts 02199
                                          Phone (617) 712-7100
18                                        Fax (617) 712-7200
                                          stacylyndoore@quinnemanuel.com
19
                                          *Attorneys for Defendant Bittrex, Inc.*
20
                                          */s/ Jonathan D. Cogan*
21
                                          KOBRE & KIM LLP
                                          Jonathan D. Cogan (admitted *pro hac vice*)
22                                        William McGovern (admitted *pro hac vice*)
                                          Jeremy O. Bressman (admitted *pro hac vice*)
23                                        800 Third Ave,
                                          New York, New York 10022
24                                        Telephone: 212-488-1210
                                          jonathan.cogan@kobrekim.com
25                                        william.mcgovern@kobrekim.com
                                          jeremy.bressman@kobrekim.com
26
                                          *Attorneys for Defendant William Hiroaki*
27                                        *Shihara*

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Gregory J. Hollon*

McNAUL EBEL NAWROT & HELGREN PLLC
Gregory J. Hollon
Timothy B. Fitzgerald
600 University Street, Suite 2700
Seattle, Washington, 98101
Telephone: 206-467-1816
ghollon@mcnaul.com
tfitzgerald@mcnaul.com

*Local Counsel for Defendant William Hiroaki Shihara*

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 29
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## **WORD LIMIT CERTIFICATION**

I certify that this memorandum contains 10,085 words, in compliance with the Stipulated Motion and Order to Expand the Briefing Word Limits, entered on June 28, 2023.

*/s/ Alicia Cobb*
Alicia Cobb, WSBA #48685

*Attorney for Defendant Bittrex Inc.*

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 30
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000

## <u>CERTIFICATE OF SERVICE</u>

        I hereby certify that on June 30, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to counsel of record.

DATED: June 30, 2023

                                 */s/ Alicia Cobb*
                                 Alicia Cobb, WSBA #48685

                                 *Attorney for Defendant Bittrex Inc.*

BITTREX INC. AND SHIHARA MOTION TO DISMISS - 31
Case No. 2:23-cv-00580-RSM

QUINN EMANUEL URQUHART & SULLIVAN LLP
1109 FIRST AVENUE, SUITE 210
SEATTLE, WASHINGTON 98101
Tel: (206) 905-7000