Honorable Ricardo S. Martinez

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

SECURITIES AND EXCHANGE
COMMISSION,

           Plaintiff,

   v.

BITTREX, INC., BITTREX GLOBAL
GMBH, and WILLIAM HIROAKI
SHIHARA,

           Defendants.

No. 2:23 Civ. 580 (RSM)

**MOTION TO VACATE FINAL JUDGMENT AND DISMISS COMPLAINT**

NOTE ON MOTION CALENDAR:

JUNE 1, 2026

**ORAL ARGUMENT REQUESTED**

Motion to Vacate Final Judgment
and Dismiss Complaint
No. 2:23 Civ. 580 (RSM)

Quinn Emanuel Urquhart & Sullivan, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ........................................................................................................ 1

BACKGROUND ............................................................................................................................ 3

LEGAL STANDARD .................................................................................................................... 11

ARGUMENT .............................................................................................................................. 12

I.    THE SEC'S ABOUT-FACE ON THE CENTRAL LEGAL THEORY UNDERLYING THIS CASE
      CONSTITUTES CHANGED CIRCUMSTANCES WARRANTING MODIFICATION OF THE FINAL
      JUDGMENT. ...................................................................................................................... 12

      A.    The SEC's issuance of a rule that contradicts the central premise of the charges in
            this case weighs in favor of vacatur. .................................................................. 12

      B.    The SEC's abandonment of similar cases against Defendants' peers also weighs
            in favor of vacatur. ............................................................................................. 13

      C.    The Final Judgment no longer serves a cognizable purpose. ................................. 14

II.   CONTINUED APPLICATION OF THE FINAL JUDGMENT WOULD BE INEQUITABLE. ................ 15

      A.    There is no ongoing or threatened violation of federal law. ................................. 16

      B.    Continued enforcement of the Final Judgment would subject Defendants to
            unjustified disparate treatment. .......................................................................... 17

III.  DEFENDANTS SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT HARM BASED ON THE
      FINAL JUDGMENT. ........................................................................................................... 19

IV.   DEFENDANTS' MOTION IS TIMELY. .................................................................................. 19

V.    DEFENDANTS ARE ENTITLED TO REIMBURSEMENT OF THE $24 MILLION THEY PAID. ........... 20

**TABLE OF AUTHORITIES**

**Page**

**Cases**

*Aaron* v. *SEC*,
446 U.S. 680 (1980) (Burger, J., concurring) ................................................................... 19

*Am. Unites for Kids* v. *Rousseau*,
985 F.3d 1075 (9th Cir. 2021) ................................................................................. 11, 13

*Bellevue Manor Assocs. v. United States*,
165 F.3d 1249 (9th Cir. 1999) ........................................................................................ 11

*Bynoe v. Baca*,
966 F.3d 972 (9th Cir. 2020) ......................................................................................... 19

*California by & through Becerra v. U.S. Env't Prot. Agency*,
978 F.3d 708 (9th Cir. 2020) ......................................................................................... 13

*Coffey v. Braddy*,
834 F.3d 1184 (11th Cir. 2016) ...................................................................................... 11

*Defs. of Wildlife* v. *Martin*,
2021 WL 5890661 (E.D. Wash. Dec. 13, 2021) .......................................................... 16

*In re Desolation Holdings, LLC*,
Case No. 1:23-bk-10597, ECF 1 (Bankr. D. Del. May 8, 2023) ..................................... 1

*Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and
Rehabilitative Servs.*,
225 F.3d 1208 (2000) ...................................................................................................... 14

*Horne* v. *Flores*,
557 U.S. 433 (2009) ................................................................................................. 11, 14

*Mulcahy v. Cheetah Learning LLC*,
386 F.3d 849 (8th Cir. 2004) ......................................................................................... 14

*NML Cap., Ltd. v. Republic of Argentina*,
No. 14 Civ. 8601 (TPG), 2016 WL 715732 (S.D.N.Y. Feb. 19, 2016), *aff'd*
644 F. App'x 98 (2d Cir. Apr. 15, 2026) ...................................................................... 12

*Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity*,
13 F.3d 33 (2d Cir. 1993) ............................................................................................... 11

*Planned Parenthood Monte Mar, Inc. v. Ford*,
　　349 F.R.D. 213 (D. Nev. 2025) ...........................................................................................20

*Rufo v. Inmates of the Suffolk Cty Jail*,
　　502 U.S. 367 (1992) .................................................................................................10, 11

*SEC v. Adodankis*,
　　No. 12 Civ. 409 (SAS) (S.D.N.Y. Jan. 26, 2016)..................................................................20

*SEC* v. *Agora, Inc.*,
　　2022 WL 7051677 (D. Md. Oct. 12, 2022) ........................................................................16

*SEC* v. *Binance Holdings Limited, et al.*,
　　No. 1:23 Civ. 1599 (ABJ) (D.D.C. Jun. 5, 2023) ...............................................................9

*SEC* v. *Coinbase, Inc.*,
　　No. 23 Civ. 4738 (KPF) (S.D.N.Y. Feb. 28, 2025) ............................................................9

*SEC v. Consensys Software Inc.*,
　　No. 24 Civ. 4578 (MKB) (E.D.N.Y. June 28, 2024) .........................................................9

*SEC v. Cumberland DRW LLC*,
　　No. 1:24 Civ. 9842 (MFK) (N.D. Ill. Oct. 10, 2024) .........................................................9

*SEC* v. *Dosti*,
　　No. 13-cv-03897 (S.D.N.Y. Jan. 15, 2016) .......................................................................17

*SEC* v. *Dragonchain, Inc.*,
　　No. 2:22 Civ. 1145 (JNW) (W.D. Wash. Aug. 16, 2022)..................................................9

*SEC* v. *Fehn*,
　　97 F.3d 1276 (9th Cir. 1996) .............................................................................................16

*SEC* v. *First City Fin. Corp.*,
　　890 F.2d 1215 (D.C. Cir. 1989)..........................................................................................16

*SEC* v. *Gentile*,
　　939 F.3d 549 (3d Cir. 2019) ..................................................................................14, 16, 17

*SEC v. Ian Balina*,
　　No. 1:22 Civ. 95 (DAE) (W.D. Tex. Sept. 19, 2022)..........................................................9

*SEC* v. *Lewis*,
　　423 F. Supp. 2d 337 (S.D.N.Y. 2006) ...............................................................................15

*SEC* v. *Northrop Corp.*,
No. 75-cv-00563 (D.D.C. Sept. 1, 2021) ..................................................................................17

*SEC* v. *Payward, Inc.*,
No. 23 Civ. 6003 (WHO) (N.D. Cal. Mar. 27, 2025) ...............................................................9

*SEC* v. *Randolph*,
736 F.2d 525 (9th Cir. 1984) ...................................................................................................14

*SEC* v. *Warren*,
583 F.2d 115 (3d Cir. 1978) ....................................................................................................14

*Sripetch v. SEC*,
No. 25-466 ........................................................................................................... 3, 10, 18

*Telink, Inc. v. United States*,
24 F.3d 42 (9th Cir. 1994) .......................................................................................................20

*Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
864 F.3d 172 (2d Cir. 2017) ....................................................................................................18

*United States* v. *Holtzman*,
762 F.2d 720 (9th Cir. 1985) ...................................................................................................19

*United States* v. *Physio-Control, Inc.*,
No. 2:19 Misc. 77 (RSL) (W.D. Wash.), 2021 U.S. Dist. LEXIS 59361
(W.D. Wash. Mar. 29, 2021) ....................................................................................................15

*United States* v. *Sec'y of Hous. & Urban Dev.*,
239 F.3d 211 (2d Cir. 2001) ....................................................................................................11

## Statutes

15 U.S.C. §§ 77e(a) 77e(c)..........................................................................................................9

15 U.S.C. § 78e .............................................................................................................................9

15 U.S.C. § 78o(a) ........................................................................................................................9

15 U.S.C. § 78q-1 .........................................................................................................................9

15 U.S.C. § 78q-1(b) .....................................................................................................................9

15 U.S.C. § 78t(a) .........................................................................................................................9

15 U.S.C. § 78u(d)(7) ..................................................................................................................10

**Rules/Other Authorities**

*Civil Enforcement Action Against Coinbase*, SEC (Feb. 27, 2025),
    https://www.sec.gov/newsroom/press-releases/2025-47 ....................................................6, 17

*Civil Enforcement Action Against Coinbase*, SEC (Feb. 27, 2025),
    https://www.sec.gov/newsroom/speeches-statements/peirce-statement-
    coinbase-022725 ..............................................................................................................6

Fed. R. Civ. P. 60(b) ...........................................................................11, 12, 14, 17, 18, 20

Fed. R. Civ. P. 60(c)(1) ...........................................................................................................19

Federal Rules of Civil Procedure Rule 60(b)(5) ................................... 1, 3, 11, 13, 15, 16, 17, 20

*Game Stopped?  Who Wins and Loses When Short Sellers, Social Media, and
    Retail Investors Collide, Part III:  Virtual Hearing Before the H. Comm. on
    Fin. Servs.*, 117th Cong. 12 (May 6, 2021) (statement of SEC Chair Gary
    Gensler), https://www.congress.gov/117/chrg/CHRG-117hhrg44837/CHRG-
    117hhrg44837.pdf ..............................................................................................................4

*New Crypto Task Force*, SEC (Jan. 21, 2025),
    https://www.sec.gov/newsroom/press-releases/2025-30 ......................................................2, 7

*No Action, Says Winklevoss*, Cointelegraph (Feb. 26, 2025),
    https://cointelegraph.com/news/sec-closes-investigation-gemini-no-
    enforcement-action .............................................................................................................9

Rule 60(b)(6) .........................................................................................................................19

*SEC Has Officially Closed, Says CEO,* Cointelegraph (Mar. 27, 2025),
    https://cointelegraph.com/news/sec-officially-closes-investigation-crypto-com .................9, 10

*Staff Statement Regarding Broker-Dealer Registration of Certain User Interfaces
    Utilized to Prepare Transactions in Crypto Asset Securities* (Apr. 13, 2026),
    https://www.sec.gov/newsroom/speeches-statements/staff-statement-
    regarding-broker-dealer-registration-certain-user-interfaces-utilized-prepare-
    staff-statement-regarding-broker-dealer-registration-certain-user-interfaces-
    utilized ..............................................................................................................................10

*Uniswap Labs*, Uniswap Labs Blog (Feb. 25, 2025), https://blog.uniswap.org/a-
    win-for-defi ........................................................................................................................9

David Maria, in his capacity as Plan Administrator for the Wind Down Entity, Bittrex Global GmbH in Liquidation ("Bittrex Global"),[1] and William Hiroaki Shihara (collectively, "Defendants") respectfully move pursuant to Rule 60(b)(5) of the Federal Rules of Civil Procedure for an order (a) vacating the Final Judgment entered against Defendants on August 15, 2023 and (b) dismissing the Complaint. *See* Complaint, ECF No. 1; Final Judgment, ECF No. 54.

## PRELIMINARY STATEMENT

This Court should vacate the Final Judgment and dismiss the Complaint in this case because they rest on the erroneous premise that the digital assets that customers traded on Bittrex's exchange constituted securities—a position the SEC explicitly has abandoned, along with similar enforcement actions against Bittrex's competitors.

On August 15, 2023, the Court entered the Final Judgment against Defendants Bittrex, Bittrex Global, and Mr. Shihara pursuant to the Consent Agreement that Defendants entered into with the SEC. *See* Final Judgment, ECF No. 54; Consent of Defendants, ECF No. 53-1 ("Consent Agreement"). The Final Judgment represented the culmination of an industry-wide investigation that began six years earlier. The SEC ultimately charged Defendants and a number of other companies in the digital asset space with violating certain registration-related requirements. The legal theory underlying the SEC's charges was that various digital assets that were trading on Bittrex's exchange constituted securities within the meaning of federal securities laws. While many of Bittrex's competitors had the financial wherewithal to contest the SEC's charges, Bittrex

---

[1] Bittrex, Inc. ("Bittrex"), along with other entities, filed for Chapter 11 bankruptcy on May 8, 2023. *See In re Desolation Holdings, LLC*, Case No. 1:23-bk-10597, ECF 1 (Bankr. D. Del. May 8, 2023). On October 31, 2023, the Bankruptcy Court entered an order confirming the "Amended Joint Chapter 11 Plan of Liquidation" for, among others, Bittrex, Inc. The plan provided that: (a) the "Wind Down Entity" was Bittrex, Inc. (*id.*, ECF 517-1 at 12); (b) the "Wind Down Entity" was substituted as "the party-in-lieu of the Debtors in all matters," (*id.*, ECF 517-1 at 30); and (c) the "Wind Down Entity shall be deemed to be dissolved" when, among other things, "all distributions hav[e] been made" (*id.*, ECF 517-1 at 28). To date, a small subset of distributions remain outstanding, and, as a result, the Wind Down Entity continues to exist as a legal entity. In conjunction with Bittrex Global's liquidation, it is now formally known as Bittrex Global GmbH in Liquidation.

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 1 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

was on the brink of a Chapter 11 bankruptcy filing at the time the SEC filed its action. Faced with the difficult decision to either (a) fight the charges and thereby complicate, prolong, and potentially upend the bankruptcy proceedings or (b) accede to the Consent Agreement and its flawed interpretation of the law, the circumstances facing the business compelled Defendants to choose the latter.

Since the Court entered the Final Judgment, however, the SEC has done an about-face. It has dismissed or stayed pending enforcement actions and closed ongoing investigations predicated on the same legal theories as its case against Defendants. In doing so, the SEC has conceded that its prior enforcement actions represented an effort to "regulate crypto retroactively and reactively, often adopting novel and untested legal interpretations," which resulted in "confusion about what is legal" and "create[d] an environment hostile to innovation and conducive to fraud." *SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force*, SEC (Jan. 21, 2025), https://www.sec.gov/newsroom/press-releases/2025-30. Most recently, on March 23, 2026, the SEC issued a Final Rule in which it explained that digital assets like the ones that were trading on Bittrex's platform "are not themselves securities." Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, 91 Fed. Reg. 13714, 13717–18 (Mar. 23, 2026). What this means is that, two-and-a-half years after extracting a settlement from a bankrupt cryptocurrency exchange premised on the legal theory that the tokens that traded on the exchange were securities, the SEC has (a) conceded that its legal theory was wrong and those tokens were *not* securities, (b) acknowledged that its enforcement strategy was misguided from the start, and (c) dropped every similar case and investigation *except* this one. As a result, Defendants, by virtue of settling early to achieve bankruptcy milestones that served creditors and investors, continue to be subject to the Final Judgment even though their conduct was, by the logic of the SEC's own concessions, entirely lawful. Under these circumstances, it would be inequitable to keep the Final Judgment in place.

The SEC's recent conduct in this litigation further demonstrates the importance of vacating

the Final Judgment. On March 12, 2026, the SEC sought an order permitting it to forfeit to the U.S. Treasury the $24 million it had obtained from Defendants for disbursement to investors who suffered financial harm from the charged conduct in this case. *See* ECF No. 56. In doing so, however, the Commission omitted the key facts that (a) it was about to issue a Final Rule that directly contradicts the basis for the charges in this case and (b) the Supreme Court is currently considering *Sripetch v. SEC*, No. 25-466, with oral argument then only weeks away, which will address the scope of the provisions the SEC relied on here to obtain the funds that are at issue in the Commission's motion to transfer. It thus appears that the SEC was trying to pull a fast one— transfer the $24 million to the Treasury so that it would be a *fait accompli* before anyone grasped the implication of the Final Rule and before the Supreme Court reined in the Commission's power. It was only when Defendants alerted the Court to the SEC's apparent gambit that the Commission acknowledged *Sripetch* and agreed to stay its motion until the Supreme Court renders a decision. *See* ECF No. 57, 58. The Commission's resort to a questionable display of candor should weigh heavily in the Court's balancing of the equities.

Where, as here, a plaintiff has disavowed the legal theory on which the Consent Agreement and Final Judgment rely and engaged in other inequitable conduct, ongoing enforcement of the Consent Agreement and Final Judgment "is no longer equitable" within the meaning of the Rule 60(b)(5). In light of the SEC's concessions, its significant recalibration in enforcement priorities, its conduct in this case, the ongoing hardship that the Consent Agreement inflicts upon the Defendants, and the public's interest in ensuring that similarly situated parties are treated similarly, the Court should vacate the Final Judgment and permit the SEC to dismiss its complaint against Defendants just as it did against Defendants' competitors. The Court should vacate the Final Judgment and Consent Agreement and dismiss the Complaint.

## BACKGROUND

Bittrex was a U.S.-based cryptocurrency exchange that Mr. Shihara and two other cybersecurity engineers founded in 2014 with the goal of operating a world-class platform for

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 3 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

trading digital tokens. Bittrex operated a secondary market for such tokens. It provided a wide selection of cryptocurrencies along with fast trade execution and dependable digital wallets to hold the tokens, all protected by industry-leading security practices. By March 2023, Bittrex's U.S. exchange had over 600,000 active users, both retail and institutional, in 46 states, and over 1.2 million customers overall.

The SEC began serving subpoenas on Bittrex in 2017. From the outset, Bittrex cooperated fully with the SEC's investigation, providing tens of thousands of documents to the SEC and making key witnesses available for sworn testimony. Bittrex also repeatedly asked the SEC to identify which of the digital assets that users traded on Bittrex's U.S. exchange the SEC considered to be securities. The SEC never did. Bittrex engaged in numerous discussions with the SEC to try to resolve the SEC's concerns, even offering to be the first cryptocurrency exchange to register with the SEC. But the SEC did not offer Bittrex a practical path forward to permit the company to remain in business.

Amid the SEC's investigation into Bittrex and other exchanges, then-SEC Chairman Gary Gensler acknowledged to Congress that the SEC had not established a clear regulatory framework for secondary markets in crypto assets, noting that "the exchanges trading in these crypto assets do not have a regulatory framework." *Game Stopped? Who Wins and Loses When Short Sellers, Social Media, and Retail Investors Collide, Part III: Virtual Hearing Before the H. Comm. on Fin. Servs.*, 117th Cong. 12 (May 6, 2021) (statement of SEC Chair Gary Gensler), https://www.congress.gov/117/chrg/CHRG-117hhrg44837/CHRG-117hhrg44837.pdf. Nevertheless, SEC Staff pushed on with their investigations, and in March 2023, delivered to Bittrex a Wells Notice indicating that SEC Staff intended to recommend the SEC bring registration-related charges against the company.

The lack of regulatory clarity, coupled with declining revenues and soaring legal costs, ultimately proved fatal to Bittrex's long-term viability. Around the time that SEC Staff sent Bittrex the Wells Notice, Bittrex informed the SEC that it intended to file for bankruptcy and publicly

announced its plans to wind down U.S. operations effective April 30, 2023.

Notwithstanding Bittrex's publicly disclosed plans to wind down, the SEC commenced this action charging Bittrex, Bittrex Global, and Mr. Shihara with various registration-related violations. *See generally* Compl., ECF No. 1. The Complaint did not allege any fraud or consumer harm. Rather, the SEC's charges were based solely on Bittrex's failure to register as a national securities exchange, broker, and clearing agency, which the SEC alleged Bittrex was required to do because it provided services to U.S. customers in connection with crypto assets that the SEC claimed were offered and sold as securities.[2] Thus, the SEC filed a suit taking a position diametrically opposed to the SEC Commissioner's concession to Congress two years earlier that the SEC had not established a clear regulatory framework for secondary markets in crypto assets.

In June 2023, Defendants moved to dismiss the SEC's Complaint, arguing, among other things, that (a) the SEC's Complaint was barred by the major questions doctrine; (b) the SEC had not pleaded sufficient facts to demonstrate that the secondary-market transactions of digital assets on Bittrex's exchange constituted securities; and (c) the SEC failed to provide adequate notice of its claims. *See* Defendant Bittrex Global GmbH's Motion to Dismiss, ECF No. 37; Motion to Dismiss on Behalf of Defendants Bittrex, Inc. and William Hiroaki Shihara, ECF No. 40.

Meanwhile, Bittrex's corporate bankruptcy was proceeding with the cloud of the SEC's enforcement action hanging over it. Defendants recognized that a full resolution of the enforcement action through litigation would take many years and would exhaust substantial financial resources, thus potentially jeopardizing Bittrex's ability to satisfy its outstanding obligations to customers, general unsecured creditors, and interest holders. Additionally, without

---

[2] Specifically, the SEC charged Bittrex with operating an unregistered national securities exchange, broker, and clearing agency, in violation of Sections 5, 15(a), and 17A(b) of the Exchange Act, and charged Mr. Shihara as a control person under Section 20(a) of the Exchange Act for the same underlying alleged violations. The SEC charged Bittrex Global, a foreign affiliate of Bittrex that served non-U.S. customers, with failing to register as a national securities exchange in connection with its operation of a single shared order book with Bittrex. Mr. Shihara was the only one of Bittrex's three cofounders who was named as a defendant in the SEC's Complaint.

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 5 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

an estimate of the potential damages that the Commission would seek, payments to any of the creditors would have been delayed by months, if not years. Although Defendants were confident in their legal positions, they felt compelled to accede to the SEC's misguided legal theories in order to maximize the value of the bankruptcy estate. Defendants thus entered into the Consent Agreement to pave the way toward ending this litigation and enabling the bankruptcy resolution to move forward.

As part of this forced settlement, Defendants consented to entry of the Final Judgment, which, as relevant here, permanently restrained and enjoined Bittrex and Mr. Shihara from violating Section 5, Section 15(a), and Section 17A of the Exchange Act, and permanently restrained and enjoined Bittrex Global from violating Section 5 of the Exchange Act. The Final Judgment also held Bittrex and Bittrex Global jointly and severally liable for disgorgement in the amount of $14.4 million, with $4 million in prejudgment interest, and a civil penalty of $5.6 million, for a total monetary penalty of $24 million. The Court entered the Final Judgment incorporating the terms of the parties' settlement on August 15, 2023. *See* Final Judgment.

Since the Court entered the Final Judgment in 2023, there has been a sea change in the SEC's view of how the federal securities laws interact with the digital asset industry. The SEC has committed to "rectify[ing] its approach and develop[ing] crypto policy in a more transparent manner."[3] The SEC's leadership has conceded that its regulation-by-enforcement strategy was undesirable because it generated enormous uncertainty for digital asset companies like Bittrex and encouraged investors and companies to move offshore at great cost to American consumers and entrepreneurs.[4] To that end, on January 21, 2025, Acting SEC Chairman Mark T. Uyeda

---

[3]    *SEC Announces Dismissal of Civil Enforcement Action Against Coinbase*, SEC (Feb. 27, 2025), https://www.sec.gov/newsroom/press-releases/2025-47.

[4]    *See, e.g., Getting Back on Base: Statement of Commissioner Hester M. Peirce on the Dismissal of the Civil Enforcement Action Against Coinbase*, SEC (Feb. 27, 2025), https://www.sec.gov/newsroom/speeches-statements/peirce-statement-coinbase-022725.

announced the formation of a Crypto Task Force dedicated to developing a comprehensive and clear regulatory framework for crypto assets.[5]  The Commission explained:

> To date, the SEC has relied primarily on enforcement actions to regulate crypto retroactively and reactively, often adopting novel and untested legal interpretations along the way.  Clarity regarding who must register, and practical solutions for those seeking to register, have been elusive.  The result has been confusion about what is legal, which creates an environment hostile to innovation and conducive to fraud.  The SEC can do better.[6]

In light of the SEC's change in policy and the pending work of the Crypto Task Force, the SEC dismissed or stayed pending cases and closed ongoing investigations against companies providing the same services as Bittrex.  As illustrated below, these have included nearly identical cases against similarly situated cryptocurrency exchanges that the SEC filed around the same time or after it filed against Bittrex, along with ongoing registration investigations against other cryptocurrency exchanges:

| EXCHANGE | ALLEGED VIOLATIONS | RESOLUTION |
|---|---|---|
| Binance | • Unregistered Exchange (15 U.S.C. § 78e)<br>• Unregistered Broker (15 U.S.C. § 78o(a))<br>• Unregistered Clearing Agency (15 U.S.C. § 78q-1(b))<br>• Control Person Liability (15 U.S.C. § 78t(a)) | Joint Stipulation to Dismiss<br><br>*See SEC v. Binance Holdings Limited, et al.,* No. 1:23 Civ. 1599 (ABJ) (D.D.C. Jun. 5, 2023), ECF No. 301. |

---

[5]    *See SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force*, SEC (Jan. 21, 2025), https://www.sec.gov/newsroom/press-releases/2025-30.

[6]    *Id*.

| EXCHANGE | ALLEGED VIOLATIONS | RESOLUTION |
|---|---|---|
| Coinbase | • Unregistered Exchange (15 U.S.C. § 78e)<br>• Unregistered Broker (15 U.S.C. § 78o(a))<br>• Unregistered Clearing Agency (15 U.S.C. § 78q-1(b))<br>• Control Person Liability (15 U.S.C. § 78t(a)) | Joint Stipulation to Dismiss<br><br>*See SEC* v. *Coinbase, Inc.*, No. 23 Civ. 4738 (KPF) (S.D.N.Y. Feb. 28, 2025), ECF No. 178. |
| Kraken | • Unregistered Exchange (15 U.S.C. § 78e)<br>• Unregistered Broker (15 U.S.C. § 78o(a))<br>• Unregistered Clearing Agency (15 U.S.C. § 78q-1) | Joint Stipulation to Dismiss<br><br>*See SEC* v. *Payward, Inc.*, No. 23 Civ. 6003 (WHO) (N.D. Cal. Mar. 27, 2025), ECF No. 127. |
| Consensys Software | • Unregistered Broker (15 U.S.C. § 78o(a))<br>• Unregistered Sale of Securities (15 U.S.C. §§ 77e(a) 77e(c)) | Joint Stipulation to Dismiss<br><br>*See SEC v. Consensys Software Inc.,* No. 24 Civ. 4578 (MKB) (E.D.N.Y. June 28, 2024), ECF No. 25. |
| Cumberland DRW | Unregistered Broker (15 U.S.C. § 78o(a)) | Joint Stipulation to Dismiss<br><br>*See SEC v. Cumberland DRW LLC,* No. 1:24 Civ. 9842 (MFK) (N.D. Ill. Oct. 10, 2024), ECF No. 46. |
| Dragonchain | Unregistered Sale of Securities (15 U.S.C. §§ 77e(a) 77e(c)) | Joint Stipulation to Dismiss<br><br>*See SEC v. Dragonchain, Inc.*, No. 2:22 Civ. 1145 (JNW) (W.D. Wash. Aug. 16, 2022), ECF No. 43. |
| Balina | Unregistered Sale of Securities (15 U.S.C. §§ 77e(a) 77e(c)) | Joint Stipulation to Dismiss<br><br>*See SEC v. Ian Balina,* No. 1:22 Civ. 95 (DAE) (W.D. Tex. Sept. 19, 2022), ECF No. 60. |

| EXCHANGE | ALLEGED VIOLATIONS | RESOLUTION |
|---|---|---|
| Uniswap | Investigation closed prior to filing of complaint | Investigation Closed<br><br>*See A Win for DeFi – SEC Closes Investigation into Uniswap Labs*, Uniswap Labs Blog (Feb. 25, 2025), https://blog.uniswap.org/a-win-for-defi. |
| Gemini | Investigation closed prior to filing of complaint | Investigation Closed<br><br>*See SEC Closed Investigation Into Gemini with No Action, Says Winklevoss*, Cointelegraph (Feb. 26, 2025), https://cointelegraph.com/news/sec-closes-investigation-gemini-no-enforcement-action. |
| Crypto.com | Investigation closed prior to filing of complaint | Investigation Closed<br><br>*See Crypto.com Probe by the SEC Has Officially Closed, Says CEO*, Cointelegraph (Mar. 27, 2025), https://cointelegraph.com/news/sec-officially-closes-investigation-crypto-com. |

Six weeks ago, on March 23, 2026, the SEC memorialized its about-face in a Final Rule, publicly conceding that digital assets like the ones at issue in this case are *not securities*. Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, 91 Fed. Reg. 13714, 13717 (Mar. 23, 2026). The SEC explained that "[a] digital commodity"—as distinct from a security subject to federal securities laws—"is a crypto asset that is intrinsically linked to and derives its value from the programmatic operation of a crypto system that is 'functional,' as well as supply and demand dynamics, rather than from the expectation of profits from the essential managerial efforts of others." *Id.* at 13718. The SEC then identified tokens it considers commodities (as opposed to securities), including

Bitcoin, Ether, Cardano, Dogecoin, XRP, and others exactly like the ones identified in the Complaint in this case. *Id.*

Most recently, SEC Staff issued an additional statement regarding the applicability of the broker-dealer registration requirements to exchanges similar to Bittrex. On April 13, 2026, the Staff of the Division of Trading and Markets explained that it "will not object" to platforms operating without registering as a broker-dealer where they "assist users engaging in user-initiated crypto asset securities transactions on blockchain protocols (or blockchain-based smart contracts) utilizing the user's self-custodial wallet," as opposed to negotiating terms for transactions, arranging for financing, take or route orders, or provide other services associated with broker-dealers. SEC Div. of Trading & Mkts., *Staff Statement Regarding Broker-Dealer Registration of Certain User Interfaces Utilized to Prepare Transactions in Crypto Asset Securities* (Apr. 13, 2026), https://www.sec.gov/newsroom/speeches-statements/staff-statement-regarding-broker-dealer-registration-certain-user-interfaces-utilized-prepare-staff-statement-regarding-broker-dealer-registration-certain-user-interfaces-utilized.

Shortly before the SEC issued the Final Rule in which it renounced once-and-for-all the legal theory on which this case is based, it moved this Court for an order permitting it to transfer to the U.S. Treasury the $24 million the Commission had obtained pursuant to the Final Judgment. *See* ECF No. 56. That motion disclosed neither (a) that the SEC was poised to issue a Final Rule that guts the premise for this case, nor (b) that the United States Supreme Court shortly would be hearing oral argument in *Sripetch v. SEC*, No. 25-466, a case that will determine whether the SEC must show that investors suffered pecuniary harm in order to obtain disgorgement under 15 U.S.C. § 78u(d)(7), the provision at the heart of the Final Judgment. The SEC thus sought an order from this Court without disclosing that two independent and imminent developments would affect whether it was entitled to the relief it was seeking.

Defendants now seek relief from the Consent Agreement and the Final Judgment and dismissal of the Complaint.

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 10 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

## LEGAL STANDARD

A district court has inherent authority to terminate or modify a consent order. *See Rufo v. Inmates of the Suffolk Cty Jail*, 502 U.S. 367, 381, 381 n. 6 (1992).[7] "[A] district court may modify or terminate a consent decree, subject to abuse-of-discretion review, if changed circumstances … have caused its continued enforcement to be inimical to the public interest." *Coffey v. Braddy*, 834 F.3d 1184, 1193 (11th Cir. 2016); *see also Rufo*, 502 U.S. at 381. "Rule 60(b)(5) is routinely used to challenge the continued validity of consent decrees and injunction[s]." *Bellevue Manor Assocs. v. United States*, 165 F.3d 1249, 1253 (9th Cir. 1999). "[A]ny showing of a significant change in factual conditions or law would justify a modification of a decree." *Patterson v. Newspaper & Mail Deliverers' Union of New York & Vicinity*, 13 F.3d 33, 37 (2d Cir. 1993) (applying a "flexible standard"). "[A] court of equity [is entitled] to focus on the dominant objective of the decree and to terminate the entire decree once that objective has been reached." *Id.* at 39; *see also* Fed. R. Civ. P. 60(b) (a "court may relieve a party or its legal representative from a final judgment ... [if] the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable"); *United States v. Sec'y of Hous. & Urban Dev.*, 239 F.3d 211, 216–17 (2d Cir. 2001) (documenting the "significant relaxation of the restrictions imposed on District Courts seeking to modify consent decrees").

Under Rule 60(b)(5), the "party requesting modification must show a significant change either in factual conditions or in the law warranting modification of the decree." *Am. Unites for Kids* v. *Rousseau*, 985 F.3d 1075, 1097 (9th Cir. 2021). The changed-circumstances inquiry should be "broad and flexible," and courts should determine "whether ongoing enforcement of the original order [is] supported by an ongoing violation of federal law." *Horne* v. *Flores*, 557 U.S. 433, 454, 456 (2009). Under this flexible standard, courts should "take all the circumstances into

---

7   Unless otherwise indicated, this memorandum omits internal citations, quotation marks, and alterations from citations.

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 11 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

account in determining whether to modify or vacate a prior injunction or consent decree." *Bellevue Manor*, 165 F.3d at 1256; *see also Rousseau*, 985 F.3d at 1097–98 (modification is warranted when "changed conditions" diminishes the public's interest in the ongoing enforcement of the consent decree). A government litigant's change in policy can constitute exceptional circumstances within the meaning of Rule 60(b). *See NML Cap., Ltd. v. Republic of Argentina*, No. 14 Civ. 8601 (TPG), 2016 WL 715732, at *6 (S.D.N.Y. Feb. 19, 2016) (indicative ruling that court would vacate injunctions due to "changed circumstances," namely the new position taken by government party following change in presidential administrations), *aff'd* 644 F. App'x 98 (2d Cir. Apr. 15, 2026).

## **ARGUMENT**

**I. THE SEC'S ABOUT-FACE ON THE CENTRAL LEGAL THEORY UNDERLYING THIS CASE CONSTITUTES CHANGED CIRCUMSTANCES WARRANTING MODIFICATION OF THE FINAL JUDGMENT.**

### A. The SEC's issuance of a rule that contradicts the central premise of the charges in this case weighs in favor of vacatur.

The Commission cannot credibly maintain that the Final Judgment should remain in place when it has issued a Final Rule that declares that cryptocurrency tokens are not securities. The gravamen of the SEC's Complaint against Defendants was that Bittrex was operating an unregistered securities exchange, broker, and clearing agency, by virtue of permitting the purchase and sale of cryptocurrency tokens on its platform. But each of those tokens—DASH, ALGO, OMG, TKN, NGC, and IHT—"does not have intrinsic economic properties or rights, such as generating a passive yield or conveying rights to future income, profits, or assets of a business enterprise or other entity, promisor, or obligor," and thus "is not a security." Application of the Federal Securities Laws to Certain Types of Crypto Assets and Certain Transactions Involving Crypto Assets, 91 Fed. Reg. 13714, 13718 (Mar. 23, 2026). Having disavowed the central premise of its Complaint against Defendants in this case in a Final Rule published in the Federal Register, the SEC cannot be heard to argue that there is any good reason to continue enforcing the Final

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 12 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

Judgment.

The issuance of the Final Rule also constitutes "a significant change … in the law warranting modification of the decree." *Rousseau*, 985 F.3d at 1097. "[O]nce the legal basis for an injunction has been removed, such that the law now permits what was previously forbidden, it is an abuse of discretion to not modify the injunction." *California by & through Becerra v. U.S. Env't Prot. Agency*, 978 F.3d 708, 717 (9th Cir. 2020). Whether cryptocurrencies constitute securities within the meaning of the federal securities laws has been *the* key legal issue facing this industry since the SEC began investigating Defendants in 2017, and it was the essential premise of the forced settlement that led to the Final Judgment. The SEC's belated 180 on this central legal issue is the quintessential change in law that justifies relief under Rule 60(b)(5). *Becerra*, 978 F.3d at 717.

This logic applies to every cause of action in the SEC's Complaint and the Final Judgment in its entirety. If the tokens at issue are *not securities*, as the SEC has conceded, then (a) Bittrex and Bittrex Global were not "effect[ing] transactions in a *security*," Complaint ¶ 235; (b) Bittrex was not "effect[ing] transactions in, or [inducing or attempting] induce the purchase or sale of, *securities*," *id.* ¶ 238, nor "perform[ing] the functions of a clearing agency with respect to a *security*," *id.* ¶ 241; and (c) Mr. Shihara was not "liable as a control person" for those underlying violations, *id.* ¶ 247. (All emphases added.) The SEC's change in position thus warrants vacatur of the Final Judgment in its entirety.

**B.      The SEC's abandonment of similar cases against Defendants' peers also weighs in favor of vacatur.**

The Commission's concession that its haphazard regulation of the cryptocurrency industry was based on "novel and untested legal interpretations" that caused "confusion about what is legal," combined with its decisions to abandon similar cases against Bittrex's competitors, also constitute changed circumstances justifying modification of the Final Judgment. *SEC Crypto 2.0: Acting Chairman Uyeda Announces Formation of New Crypto Task Force*, SEC (Jan. 21, 2025),

MOTION TO VACATE FINAL JUDGMENT
AND DISMISS COMPLAINT
No. 2:23 Civ. 580 (RSM)

- 13 -

QUINN EMANUEL URQUHART & SULLIVAN, LLP
1109 First Avenue, Suite 210
Seattle, Washington 98101

https://www.sec.gov/newsroom/press-releases/2025-30.   The SEC has acknowledged that the better path for regulating digital assets and other nascent technologies is to (a) abandon enforcement actions that are otherwise identical to this case and instead (b) work with the industry to promulgate a durable regulatory framework that protects investors and consumers while rewarding and fomenting innovation.  That is exactly the kind of "change[] in governing law" and "new policy insight[]" that "warrant[s] reexamination of the original judgment." *Horne* v. *Flores*, 557 U.S. 433, 448 (2009).  There is no persuasive justification to continue enforcing a judgment that all parties agree was based on an erroneous legal theory and a misguided enforcement strategy.

## C.    The Final Judgment no longer serves a cognizable purpose.

Relief is also appropriate here because the Final Judgment's sole purpose is to deter conduct that the SEC now appears to agree was lawful from the outset (or are at least should be regulated through alternative channels).  An injunction that prohibits lawful conduct serves no useful purpose, because the "purpose of injunctive relief against violators of the securities laws is to deter future violations, not to punish the violators." *SEC* v. *Randolph*, 736 F.2d 525, 529 (9th Cir. 1984); *see also SEC* v. *Gentile*, 939 F.3d 549, 560 (3d Cir. 2019) ("[C]ourts have consistently explained that SEC injunctions must be intended to deter the violator from further infractions (and thereby protect the public), not punish past misconduct.").  Courts vacate consent judgments under Rule 60(b) where, as here, subsequent factual or legal developments undermine the intended purpose of the judgment or render a prospective injunction unnecessary. *See, e.g.*, *SEC* v. *Warren*, 583 F.2d 115, 122 (3d Cir. 1978) (affirming district court's vacatur of consent judgment pursuant to Rule 60(b) where, among other things, subsequent changes in SEC regulations had "diminished the need" for the permanent injunction at issue).

Here, to the extent the Final Judgment has any ongoing substantive function, it simply requires Defendants to "obey the law" in the future—something they are required to do, and intend to do, regardless of the Final Judgment.  Such injunctions are disfavored and serve no cognizable purpose. *See Florida Ass'n of Rehabilitation Facilities, Inc. v. State of Fla. Dept. of Health and*

*Rehabilitative Servs.*, 225 F.3d 1208, 1222 (11th Cir. 2000) ("This Circuit has repeatedly held that 'obey the law' injunctions are unenforceable."); *Mulcahy v. Cheetah Learning LLC*, 386 F.3d 849, 852 n.1 (8th Cir. 2004) ("blanket injunctions to obey the law are disfavored"); *SEC* v. *Warren*, 583 F.2d at 121 (affirming dissolution of SEC permanent injunction that "merely require[d] defendants 'to obey the law' in the future"); *SEC* v. *Lewis*, 423 F. Supp. 2d 337, 341 (S.D.N.Y. 2006) ("Although dissolution eliminates the S.E.C.'s ability to institute contempt proceedings against Lewis in the event—however unlikely—he were to violate securities laws, the S.E.C. retains its right to prosecute criminally or proceed civilly if need be."). The Court should vacate the Final Judgment because it is unnecessary and has ceased to serve any practical purpose.

This case is similar to *United States* v. *Booth Fisheries Co.*, in which the Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, vacated 11 legacy antitrust judgments where "the purposes of the consent decree ha[d] been fully achieved" and "it [was] no longer necessary or equitable to keep the consent decree in effect." *United States* v. *Physio-Control, Inc.*, No. 2:19 Misc. 77 (RSL) (W.D. Wash.), 2021 U.S. Dist. LEXIS 59361, at *2 (W.D. Wash. Mar. 29, 2021). The government had argued that the termination of the judgment was appropriate because (a) "changed circumstances since their entry" had rendered the permanent injunctions "unnecessary," (b) termination would "allow the Court to clear its docket" of unnecessary judgments, (c) "[t]o the extent that defendants no longer exist, the related judgment serve[d] no purpose," and (d) the prohibitions in the judgments "amount[ed] to little more than an admonition that defendants must not violate the law" and "add[ed] little additional deterrence." *Id.* at 8–9. Each of these justifications applies with equal force in this case. The Court should follow suit and vacate the Final Judgment.

## II.   CONTINUED APPLICATION OF THE FINAL JUDGMENT WOULD BE INEQUITABLE.

The continued prospective application of the Final Judgment also clashes with fundamental principles of equity and fairness. *See* Fed. R. Civ. P. 60(b)(5).

**A.    There is no ongoing or threatened violation of federal law.**

There is no risk warranting continued injunctive relief in this case because Defendants have abandoned the digital asset industry.  Bittrex no longer exists, and Bittrex Global is now in liquidation with dissolution in the near future.  Mr. Shihara, meanwhile, is no longer involved in the cryptocurrency exchange business.  The Final Judgment thus serves only to punish and stigmatize Bittrex, Bittrex Global, and Mr. Shihara based on past conduct that the SEC has recognized it never should have charged in the first place.

Where, as here, there is no ongoing or plausibly threatened violation of federal law, "an injunction is detrimental to the public interest under Rule 60(b)(5)." *Defs. of Wildlife* v. *Martin*, 2021 WL 5890661, at *4 (E.D. Wash. Dec. 13, 2021).  Because injunctions are intended only to guard against prospective harm, it follows that an injunction should stand only to the extent that there remains a "reasonable likelihood of future violations of the securities laws." *SEC* v. *Fehn*, 97 F.3d 1276, 1295 (9th Cir. 1996).  In such instances, where the facts and changed circumstances, along with common sense, show that the parties subject to the injunction will comply with the law, an injunction becomes superfluous and courts are justified in dissolving them. *See, e.g.*, *SEC* v. *Agora, Inc.*, 2022 WL 7051677, at *2 (D. Md. Oct. 12, 2022) ("Given that there is no indication Stansberry will repeat the enjoined conduct, the objective of the injunction has been achieved and the Court finds applying the injunction to be no longer equitable."); *SEC* v. *Gentile*, 939 F.3d 549, 565 (3d Cir. 2019) (explaining that SEC injunctions are only appropriate where a real threat of future harm exists and must be "carefully tailored to enjoin only that conduct necessary to prevent a future harm"); *SEC* v. *First City Fin. Corp.*, 890 F.2d 1215, 1229 (D.C. Cir. 1989) (noting that justifying an injunction's prospective application "even in part" in terms of punishment for a defendant's past alleged conduct, or in terms of "propitiating public sentiment," is "objectionable as a matter of law").

**B.      Continued enforcement of the Final Judgment would subject Defendants to unjustified disparate treatment.**

It also would be manifestly unfair to continue to enforce the Final Judgment against Defendants when the SEC abandoned investigations and enforcement actions against all other exchanges like Bittrex. So far as Defendants are aware, they are the *only* ones who remain bound by judgments premised on the legal theories that the SEC now concedes were flawed or, at a minimum, should not be pursued against Defendants' peers. The only difference between Defendants and their peers is that Defendants had to acquiesce to a forced settlement so that Bittrex's corporate bankruptcy could be resolved. Had Defendants litigated the matter (at the expense of substantially delaying the bankruptcy proceedings and diminishing funds available to creditors), the SEC no doubt would have dismissed this case just like it did in its cases against Coinbase, Kraken, and many others.

Traditional notions of fairness—beginning with the idea that like parties should be treated alike—militate in favor of vacating the Final Judgment. Courts have, for this reason, recognized in the context of SEC enforcement actions that "there is no great public or national interest to be served by an injunction in essence against a single individual." *SEC* v. *Gentile*, 939 F.3d 549, 563 (3d Cir. 2019). Rule 60(b) relief is appropriate where, as here, parties seek the same relief afforded to similarly situated individuals or entities in parallel or similar enforcement actions. *See, e.g.*, *SEC* v. *Dosti*, No. 13-cv-03897 (S.D.N.Y. Jan. 15, 2016) (granting unopposed motion to vacate consent judgment under Rule 60(b) where, among other things, it was predicated on the same or similar facts and conduct at issue in parallel enforcement action dismissed by SEC); *SEC* v. *Northrop Corp.*, No. 75-cv-00563 (D.D.C. Sept. 1, 2021) (granting unopposed motion to vacate final judgments of permanent injunction under Rule 60(b)(5) where court previously vacated substantially similar SEC permanent injunction against one of defendant's direct competitors).

The Final Judgment in this matter should be terminated for precisely the same reasons that it was appropriate to dismiss or close the SEC's other actions based on the same conduct and the

same now-abandoned legal theory. It would be unjust for Defendants to remain subject to the Final Judgment when the SEC's pivot from litigation to policymaking has provided a reprieve to other companies and individuals who engaged in the same conduct.

C.    **The SEC has engaged in inequitable litigation tactics.**

Enforcement of the Final Judgment would be inequitable in light of the Commission's apparent attempt to snow the Court into permitting the SEC to appropriate the $24 million the SEC collected for the benefit of investors. The SEC filed the motion to transfer the $24 million to the Treasury mere weeks before (a) the Commission itself issued a Final Rule that demonstrates there is no basis for liability in this case and (b) the Supreme Court would hear oral argument in a case that will determine whether—even if there were a basis for liability—there is a basis for disgorgement. *See supra* at 3. Yet the Commission disclosed neither one of these obviously relevant facts in its motion. *See* ECF No. 56. Nor did the Commission make any effort prior to filing its motion to meet and confer with Defendants, which, as the Commission knew, have been in bankruptcy and liquidation proceedings for years. It was only when Defendants opposed the motion—no doubt to the great surprise of the SEC—that the Commission came clean, acknowledged *Sripetch*, and agreed to stay its motion pending the outcome in the Supreme Court. Such conduct is unbecoming of a government agency charged with protecting investors and maintaining fair, orderly, and efficient markets. The SEC's resort to these kinds of tactics should weigh heavily in the Court's balancing of the equities. *Cf. Thai-Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 864 F.3d 172, 182 (2d Cir. 2017) ("[B]ecause vacatur under Rule 60(b) is an equitable remedy, courts may deny Rule 60(b) relief if the moving party is found to have acted inequitably.").

Moreover, by the SEC's own admission, none of the consumers supposedly harmed by Defendants' conduct will see a dime of the $24 million. The SEC's motion to transfer the $24 million to the U.S. Treasury was premised on its claim that returning the funds to individual investors would be "infeasible." Dkt. 56 at 4. Implicit in this assertion is the fact that no investor

has come forward and demonstrated any financial loss from the charged conduct in this case. The upshot is that leaving the Final Judgment in place would deprive Defendants of $24 million that was supposed to go to harmed investors, even though (a) there are no harmed investors, (b) there were no securities violations in the first place, and (c) the SEC tried to pull a fast one and get Court permission to take control of the $24 million before the Final Rule and the Supreme Court made it impossible for the Commission to do so. That is anything but equitable.

**III.    DEFENDANTS SUFFERED, AND CONTINUE TO SUFFER, SIGNIFICANT HARM BASED ON THE FINAL JUDGMENT.**

Relief from the Final Judgment also would be meaningful because the permanent injunction in this case continues to impose substantial undue hardship on Mr. Shihara in particular. Since the final judgment was entered, Mr. Shihara has faced substantial difficulties in securing banking at major U.S. financial institutions or accessing U.S. equities markets. If the injunction entered against Mr. Shihara in this case remains in place, he will remain locked out of the securities industry based on a novel theory of liability that the Commission has now abandoned. Relief is also critical to protect Mr. Shihara from ongoing reputational damage and other related injuries that flow from the injunction's continued operation. *See, e.g.*, *Aaron* v. *SEC*, 446 U.S. 680, 703 (1980) (Burger, J., concurring) ("An injunction is a drastic remedy, not a mild prophylactic, and should not be obtained against one acting in good faith.").

**IV.    DEFENDANTS' MOTION IS TIMELY.**

Defendants are moving for relief from the Final Judgment "within a reasonable time." Fed. R. Civ. P. 60(c)(1). Courts exercise leniency in the reasonable-time analysis, especially if there is no prejudice to the opposing party. *See, e.g.*, *United States* v. *Holtzman*, 762 F.2d 720, 725 (9th Cir. 1985) (five-year delay was reasonable in seeking relief from permanent injunction). Here, Defendants are moving within weeks of the SEC's issuance of a Final Rule that directly contradicts the basis for the complaint in this case. A short passage of time such as this between an indisputable change in law that justifies vacatur of a consent agreement and judgment is

MOTION TO VACATE FINAL JUDGMENT                    - 19 -                    QUINN EMANUEL URQUHART & SULLIVAN, LLP
AND DISMISS COMPLAINT                                                       1109 First Avenue, Suite 210
No. 2:23 Civ. 580 (RSM)                                                     Seattle, Washington 98101

reasonable. *See Bynoe v. Baca*, 966 F.3d 972, 980 (9th Cir. 2020) ("When a Rule 60(b)(6) motion is premised on a change in law, courts measure timeliness "as of the point in time when the moving party has grounds to make [a Rule 60(b)] motion, regardless of the time that has elapsed since the entry of judgment."); *Planned Parenthood Monte Mar, Inc. v. Ford*, 349 F.R.D. 213, 219 (D. Nev. 2025) (citing *Bynoe* in granting motion under Rule 60(b)(5)).

## V.    DEFENDANTS ARE ENTITLED TO REIMBURSEMENT OF THE $24 MILLION THEY PAID.

Finally, the Court should order the SEC to return (a) the $14.4 million disgorgement and $4 million prejudgment interest and (b) the $5.6 million civil penalty that Defendants paid pursuant to the Final Judgment. *See* ECF No. 54, § III.  The basis for those payments is the conclusion that Defendants' conduct violated the securities laws.  The SEC's change in position and issuance of the Final Rule have rendered that conclusion untenable.  In the absence of underlying violations of the law, there is no basis for disgorgement or a civil penalty.  Moreover, the SEC recently conceded that it could not identify any victims to whom the disgorgement amount could be paid. *See* ECF No. 56, at 2 ("The SEC staff has since determined that a distribution is infeasible in this matter because it is unable to identify the investors harmed by the underlying conduct and calculate the amount of harm suffered by individual investors.").  There is thus no obstacle to the SEC returning to Defendants the money they paid pursuant to the Final Order.  Upon vacatur, the Court should order the SEC to do so. *See, e.g.*, *Telink, Inc. v. United States*, 24 F.3d 42, 46–47 (9th Cir. 1994) ("[T]he recovery of wrongly paid fines is incident to the vacating and setting aside of the wrongful conviction"); *SEC v. Adodankis*, No. 12 Civ. 409 (SAS) (S.D.N.Y. Jan. 26, 2016), ECF No. 141 (vacating final judgment and ordering SEC to return funds defendants previously paid pursuant to that judgment).

## CONCLUSION

For the reasons set forth above, the Court should (a) vacate the Final Judgment and the underlying Consent Agreement, (b) order the return of the disgorgement, prejudgment interest, and civil penalty that Bittrex and Bittrex Global paid to the SEC, and (c) dismiss the Complaint

with prejudice.

DATED:     May 4, 2026          Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

 /s/ *Alicia Cobb*
Alicia Cobb, WSBA No. 48685
1109 First Avenue, Suite 210
Seattle, WA 98101
(206) 905-7000
aliciacobb@quinnemanuel.com

Robert A. Zink (admitted *pro hac vice*)
555 13th Street NW, Suite 600
Washington, D.C. 20004
(202) 538-8000
robertzink@quinnemanuel.com

Daniel R. Koffmann (admitted *pro hac vice*)
865 S. Figueroa Street, 10th Floor
Los Angeles, California 90017
(213) 443-3000
danielkoffmann@quinnemanuel.com

*Attorneys for David Maria, in his capacity as Plan Administrator for the Wind Down Entity, and Defendants Bittrex Global GmbH in Liquidation and William Hiroaki Shihara*

I certify that this memorandum contains 6,823 words, in compliance with the Local Civil Rules.